[L. A. No. 27892.   In Bank.   Aug. 21, 1964.]

ROBERT H. LUND et al., Petitioners, v. THE SUPERIOR COURT OF ORANGE COUNTY et al., Respondents; WILLIAM PAUL BLAIR et al., Real Parties in Interest.

Robert H. Lund and John R. Brunner, in pro per., Robert M. Lawlis and Floyd H. King for Petitioners.

No appearance for Respondents.

Blair & Raydon and James P. Young, in pro. per., for Real Parties in Interest.

PETERS, J.—An alternative writ of prohibition issued in this case restraining respondent court from proceeding further to enforce its order requiring petitioners to make payment to several of the real parties in interest, and also restraining respondent sheriff from making levy under that order. Further review of the facts and the law demonstrates that the trial court's order in question was beyond the juris-

diction and power of that court, and that a peremptory writ should issue.

The facts, set forth in chronological order, are as follows:

On April 4, 1958, Harry W. Saulsbery and Helen W. Saulsbery (hereafter referred to as plaintiffs) filed in respondent court a civil action (No. 76253, hereafter referred to as the principal action) in which Mid Continent Oil Corporation was named as the principal defendant. Subsequently, and during the course of the action, that corporation changed its name to Mid Counties Oil Corporation. It will hereafter be referred to as the defendant. Friis & Gra were, at that time, attorneys of record for plaintiffs.

On June 9, 1958, defendant filed its answer, John R. Brunner, one of the petitioners, being its attorney of record. Thereafter pretrial conference was held and the action was set for trial on January 15, 1959.

On January 14, 1959, Phillip E. Poppler and John R. Brunner were substituted as attorneys of record for defendant,[1] and the trial date was continued in order to allow the parties to conclude certain discovery proceedings.

On March 23, 1959, the case was taken from the trial calendar and restored to the pretrial calendar. On May 25th it was dropped from the pretrial calendar.

Nothing of significance occurred during the years 1960-1962 other than the above-noted changes in the law firm of which petitioners Brunner and Lund are members, the change in defendant's name, and some correspondence between the attorneys. During this period plaintiffs' attorneys received at least one letter from defendant's attorneys which was on the letterhead of "Lund, Poppler & Brunner," but which was signed simply "John R. Brunner."

On February 21, 1963, William Paul Blair (one of the real parties in interest) was formally substituted for Friis & Gra as attorney for plaintiffs. Thereafter, and on a date not

---

[1]No record of the various substitutions of attorneys has been presented, but according to the allegations of the petition, Brunner (who was defendant's original attorney of record) and Poppler formed a law firm subsequent to defendant's first appearance, and a substitution was filed to reflect this fact. Subsequently (as will be noted below) Robert H. Lund (also a petitioner herein) joined the firm, but no formal notice of association or substitution was filed in the action for the purpose of noting him as an attorney of record. Later Poppler (who is not a party to this proceeding) withdrew from the firm. Petitioners contend that by reason of these facts Lund never became an attorney for defendant.

noted, Blair filed formal notice of association of Gerald T. Raydon and James Patterson Young (both also real parties in interest), indicating that the three had formed the law firm of Blair & Raydon.

On April 5, 1963, five full years had elapsed from the date of filing the complaint in the principal action.

On June 26, 1963, plaintiffs moved for an order allowing them to file a supplemental complaint. Although the various parties to the instant proceeding seek to create an issue regarding Lund's status as an attorney of record, the actual notice of this motion has not been included among the documents which have been filed as exhibits to the petition and reply in the instant proceeding. We are therefore uninformed as to whether that document was addressed solely to Brunner, or was addressed to Brunner and Lund jointly as attorneys for defendant.

On August 2, 1963, the motion was heard. John R. Brunner appeared as attorney for the defendant corporation, and opposed on the ground that all further proceedings were barred by the provisions of Code of Civil Procedure section 583.[2] The motion to file the supplemental complaint was granted, although no formal order was made until the following month.

On August 26, 1963, an application for an order extending time to plead to the supplemental complaint was filed. That document was typed on stationery of "Lund & Brunner," but was signed solely by Brunner. Attached thereto was a declaration by Brunner. The exhibit, filed in this proceeding by the real parties in interest in support of the inference that "Lund & Brunner" were the attorneys of record, does not contain that declaration, and so we have no information as to what Brunner may have stated. However, a second application and declaration filed subsequently, a copy of which has been filed by petitioners, throws some light on this subject.

On September 4, 1963, the court made its formal order granting leave to file the supplemental complaint. That order

---

[2]Section 583 provides, in part: "Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, . . ." Several exceptions to that mandate are set forth, but the real parties have not suggested that any such exception here existed, nor have they argued that the dismissal was not mandatory.

was typed on stationery of Blair & Raydon, and so was obviously prepared by the attorneys for plaintiffs. It states that John R. Brunner appeared as counsel for defendant.

On September 18, 1963, a second application for an order extending time to answer was filed. This was typed on stationery of Lund & Brunner, and signed only by John R. Brunner. The declaration of Brunner attached thereto states that he is "apparently attorney of record for defendant," but, as the action was filed more than five years before, he does not have office files pertaining thereto, and that he is attempting to locate the same. In their petition herein, petitioners allege that because of the several personnel changes in the firm, the secretary who typed the documents at this point in the proceedings was unaware that it was improper to use stationery showing Lund's name, and that her error went unnoticed. However, they stress the facts that Lund had never been authorized by the defendant to appear for it, that no formal association of counsel had been filed naming him, and that Brunner, only, had signed the various appearances filed in court.

On October 9, 1963, the answer to the supplemental complaint was filed. That document was prepared on stationery showing only the name of John R. Brunner, as attorney for defendant, and was signed and verified by him, alone. It included a plea in bar based on section 583.

On November 4, 1963, Blair & Raydon, as attorneys for plaintiffs, served a notice that the action was set for pretrial on January 17, 1964, and for trial on February 13, 1964. That document was addressed, on its face, to the defendant by name, "and to John R. Brunner, Attorney."

Later in the same month one of plaintiffs' counsel telephoned to Brunner, asking for certain information relating to defendant corporation, and was informed that Brunner was not authorized to make voluntary disclosures. According to the allegations of the petition, Brunner suggested that the information could be obtained by interrogatories and was answered with an obscenity and a threat that his deposition would be taken.

On December 20, 1963, plaintiffs' counsel served, by mail, a notice addressed to defendant corporation and to Brunner, as its attorney, that they would take Brunner's deposition at the office of plaintiffs' attorneys on December 30, 1963. *No subpena to take such deposition was issued or served.*

On December 28, 1963, petitioner Lund wrote to plaintiffs'

counsel, stating that he (together with one Robert M. Lawlis) had been retained by Brunner to represent the latter in connection with the attempt to take his deposition. The letter stated that since Brunner was neither a party to the action nor an officer or managing agent of a party, and had not been served with a subpena, the writer had advised him not to appear for his deposition.

On January 3, 1964, plaintiffs' counsel obtained from the clerk of the respondent court two subpenas to take depositions on January 13, 1964, at their office in Los Angeles. One such subpena was addressed to petitioner Brunner, and was personally served on him in Los Angeles on January 7th. The other was addressed to William E. Tice, Jr., who is the third petitioner herein, and who was not a party to the action, but had once been an officer of defendant corporation, and had severed his connection with the same many years before issuance of the subpena. He was personally served with the subpena in Orange County on January 5th. In both subpenas an oversight, in conforming the printed forms to the actual facts, resulted in the statement that the depositions would be taken in the City of Los Angeles, County of Orange. *No notice of taking either deposition was served or filed.*

On January 9, 1964, petitioner Lund again wrote to plaintiffs' counsel, stating that both Tice and Brunner had consulted him in connection with the subpenas. He stated that he had advised each not to appear (and that neither would appear) for the reason that the subpenas, issued by a court of one county for deposition in another county, were invalid.[3] No mention was made of the ambiguity in the place of taking the depositions, nor of the failure to serve defendant with any notice thereof. Failure to mention the latter was, of course, consistent with Lund's position that he represented only the persons whose depositions were required, and not the defendant.

On January 11, 1964, plaintiffs' attorneys wrote to Lund, stating that notwithstanding advance notice that neither Brunner nor Tice would appear for deposition on January 13th, a reporter would be present at the time and place set.

On January 13, 1964, neither Brunner nor Tice appeared,

[3]Originally petitioners took the position that the statutes governing depositions required the subpena to be issued by the court in the county wherein the deposition was to be taken. In their petition herein they acknowledge subsequent discovery of their error, and have waived such contention.

but according to the allegations of the real parties in interest, plaintiffs' attorneys held themselves and a stenographic reporter in readiness to take the depositions.

On the same day plaintiffs' counsel mailed to petitioner Lund three copies of a document addressed: "To WILLIAM E. TICE, JR., JOHN R. BRUNNER, and their attorney, ROBERT H. LUND." One copy was sent in an envelope addressed directly to Lund, one in an envelope addressed to Tice, care of Lund, and the third in an envelope addressed to Brunner, care of Lund. All were mailed to Lund's office. None was served directly on Tice or Brunner. In each case, the document was entitled in the principal action, and purported to be a "NOTICE OF MOTION FOR ORDER FOR TAKING OF DEPOSITIONS AND FOR PAYMENT OF PLAINTIFFS' EXPENSES," together with a declaration in support thereof, and a memo of points and authorities. The notice stated that the motion would be made before respondent court on January 27, 1964, and that request would be made for an order that "each of you pay to plaintiffs' attorneys the sum of Eleven Hundred Dollars ($1100.00) as the reasonable expenses incurred by plaintiffs herein in obtaining this order, including reasonable attorneys fees and including expenses incurred for your failure to appear on December 30, 1964 [sic], on plaintiffs Notice of Taking Oral Deposition, and for your failure to appear on January 13, 1964, after having been served with Subpena Re Deposition in the above-entitled matter." The declaration recited the facts regarding the service of the notice for December 30th and the service of the subpenas for January 13th, but did not allege service of subpena in connection with the former or service of notice in connection with the latter. It did not allege that Lund ever appeared as an attorney of record for defendant. It did allege that plaintiffs' attorneys had held themselves in readiness to take the depositions for a matter of three hours, and asserted that $1,100 was the reasonable cost of the same, and that $350 was a proper award for obtaining the order for which the motion was to be made. Attached to the declaration were purported copies of the subpenas, but because the same were unconformed printed copies, they were incorrect and did not indicate the county of issuance, the county where the depositions were to be taken, or the error in placing the City of Los Angeles in Orange County. (The original subpenas were never filed.) The points and authorities indicated reliance on Code of Civil Procedure section 1209 (proceedings on contempt) as well as

on the several discovery statutes. The affidavit of mailing stated that service was made "on the defendants in said action," but showed that such service was on Lund, Brunner and Tice, all by mailing in care of Lund.

On January 15th and 16th there was correspondence between Blair & Raydon, as attorneys for the plaintiffs, and John R. Brunner, as attorney for the defendant, regarding procedures in the principal action. In addressing the latter, the former did not include Lund's name.

On January 17, 1964, the principal action came on for pretrial. Defendant was represented in court by a Mr. Long, of Jans & Long, who had been associated by Brunner for that purpose. Defendant moved for a dismissal under the five-year provision of section 583, and the court continued that motion to January 24th, to be heard together with plaintiffs' motion for an order to take depositions and for costs.

On January 22, 1964, Lund wrote a letter to the clerk of respondent court, asking that it be brought to the attention of the judge who would hear the motion. Therein he stated that he and Mr. Lawlis had been retained by Tice and Brunner solely in connection with the attempt to take their depositions, and did not represent any party to the action; that he had advised his clients not to appear for their depositions because they had not been served with valid subpenas; that he had so notified the attorneys for plaintiffs in advance, in order to give them opportunity to avoid the alleged costs; that although he had received copies of the purported notice of motion, addressed to himself as attorney for Tice and Brunner, and to the latter persons care of himself, none of the three was a party to the action; that, as a result, he was not entitled to appear in response to the motion, and the court did not obtain jurisdiction over any of the three persons to whom the notice was addressed; that for the reasons stated, he would not appear at the hearing of the motion. He also called the court's attention to the fact that the copies of subpena attached to the moving party's declaration were not true copies of the subpena which had been delivered to his clients.

On January 24, 1964, the combined motions were heard. Plaintiffs appeared by Blair & Raydon. Mr. Long again appeared on behalf of Mr. Brunner, as attorney for defendant, and advised the court that he was not authorized to appear for Tice, Brunner or Lund in their personal capacities. His arguments were confined to the motion to dismiss the

action, and no appearance was made in opposition to the plaintiffs' motion. The minutes of the court (which do not appear to have been entered until January 31st) show that the court granted the motion "for payment of Plaintiff's [*sic*] expenses, in the sum of $350.00 counsel fees for this appearance and $1100.00 as and for counsel fees, costs, and Reporters' fees previously incurred. Court ordered Defendants and their attorneys of record, now and hereafter to comply with all lawful notices and statutory proceedings required of them in the future course of this action and in any other action which may be combined with, consolidated with, or concerning the same subject matter as this action. Court granted the motion to dismiss this action. . . ."

On January 29, 1964, a formal order (prepared on the stationery of plaintiffs' attorneys) was signed by the court. It was entitled in the principal action, and bore the title of "ORDER FOR PAYMENT OF PLAINTIFFS' EXPENSES AND FOR COMPLIANCE WITH DISCOVERY PROCEEDINGS." However, it was in the form of a notice rather than that of a judgment, commencing with the address: "To: WILLIAM E. TICE, JR., JOHN R. BRUNNER, and their attorney, ROBERT H. LUND:" In the body of the document, Tice, Brunner and Lund were jointly ordered "to pay to Blair & Raydon, attorneys for plaintiffs herein, the sum of Eleven Hundred Dollars ($1,100.00) as the reasonable expense incurred by plaintiffs' attorneys arising out of your failure to appear on December 30, 1963, and on January 13, 1964, after being served respectively with Notice of Taking Deposition and Subpena re Deposition in the above-entitled matter. . . . [together with] the sum of Three Hundred and Fifty Dollars ($350.00) as the reasonable cost of obtaining this order." A final paragraph ordered defendants and their attorneys to comply with future discovery procedures "in the course of the future conduct of this action, and any other action hereinafter to be combined or consolidated herewith or concerning the same subject matter." That order was filed on January 30, 1964, six days after the minute order granting the motion to dismiss.

On February 5, 1964, notices of the filing of such order were mailed to Tice and Brunner, respectively, personally and not through any attorney. None was served on Lund.

On February 14, 1964, Blair and Raydon filed an affidavit for issuance of execution predicated upon the foregoing order, requesting that execution be issued in their favor, and with

no explanation of why execution should not be made to issue in favor of plaintiffs.

On February 18, 1964, an affidavit and order for issuance of writ in the sum of $1,450 was filed. Thereafter, according to the allegations of the petition, respondent sheriff made levy on the property of petitioners, and (not having received full satisfaction) threatens to make further levy.

From the foregoing facts it appears that petitioner Lund was never authorized, and did not intend, to appear as an attorney of record for defendant. The fact that his name inadvertently appeared on the stationery on which two appearances were made more than five years after the original answer was filed, is more than offset by the fact plaintiffs' attorneys never used his name on notices or correspondence in connection with the principal action. It is clear, from their actions, that they considered him as the attorney for Brunner and for Tice. Even in that capacity, he had never appeared as an attorney of record, his authority having been set forth exclusively in correspondence regarding the limited matters arising out of the attempts to take his clients' depositions.

It is equally clear that although Tice had once been connected with defendant corporation, insofar as the proceedings regarding his deposition were concerned, he was a nonparty witness. Although Brunner was the attorney of record for defendant, there is no claim that he was either an officer or managing agent, and it follows that, insofar as these particular proceedings are concerned, he also was merely a nonparty witness.

With those facts in mind, we proceed to determine the issues presented by the respective actions of the parties to the instant proceeding.

*An extraordinary writ is a proper remedy herein:*

Petitioners sought certiorari, mandamus or prohibition, in the alternative, together with orders restraining respondent court and sheriff from proceeding until final disposition of the matter. We issued only an alternative writ of prohibition and the temporary restraining orders. The real parties in interest contend that prohibition does not lie because appeal from the order presented an adequate remedy.[4] This

---

[4]The real parties also make similar contentions in regard to petitioners' request for certiorari and mandate, but since we issued only an alternative writ of prohibition, those contentions are moot. The real parties also contend that no writ should lie because the real parties in interest were not served. They do not document such claim, and the

contention is necessarily predicated on the supposition that the order in question was appealable. That is a highly debatable proposition.

Generally, no order or judgment in a civil action is appealable unless it is embraced within the list of appealable orders provided by statute (Code Civ. Proc., § 963). The order here under review purports to be an order levying sanctions under section 2034 of the Code of Civil Procedure (sanctions for failure to make discovery when required). There seems to be no case deciding whether such an order is appealable. It is only appealable if it can be considered to be a final judgment on a collateral matter growing out of the action (*Sjoberg* v. *Hastorf*, 33 Cal.2d 116, 119 [199 P.2d 668]). The better view is that an order made for the purposes of furthering discovery proceedings, or granting sanctions for refusal to make discovery, is not appealable (*Huenergardt* v. *Huenergardt*, 218 Cal.App.2d 455 [32 Cal.Rptr. 714]; *Farnham* v. *Superior Court*, 188 Cal.App.2d 451, 455 [10 Cal.Rptr. 615]). The instant order combined an order requiring the *parties* to perform future acts in furtherance of discovery with an order requiring nonparty witnesses to make payments to parties' attorneys. It is, therefore, very questionable as to whether respondent court intended it as a final order in a collateral proceeding. Certainly, the fact that it purported to be a judgment against persons who were not parties to the action in which it was entitled, and in favor of persons who were not parties, creates grave doubt as to the standing of these petitioners to appeal. But we do not find it necessary to decide this question of the order's appealability. If we assume, *arguendo*, that the order was appealable, that fact alone would not prohibit recourse to one or another of the extraordinary writs when circumstances indicate that appeal would be an inadequate remedy. ▮ Regardless of the ultimate ability to appeal, prohibition is an appropriate remedy to circumvent the imposition of sanctions applied in excess of the respondent court's jurisdiction (*City of Los Angeles*

affidavit of service attached to the original petition, as filed, indicates that they are in error. It may be that their contention is predicated upon the fact that the plaintiffs and defendant in the principal action (each of whom is named as a real party in interest) were served by serving a copy of the petition on their respective attorneys of record. Be this as it may, the plaintiffs' attorneys are also named as real parties in interest, and the facts show them to be the principal parties interested. They were served by mail. Each of the respondents admitted receipt of personal service.

v. *Superior Court,* 51 Cal.2d 423, 429 [333 P.2d 745] ; *Twin Lock, Inc.* v. *Superior Court,* 52 Cal.2d 754, 758 [344 P.2d 788]). ▆▆▆ When, as here, the respondent court has exceeded its jurisdiction, respondent sheriff has levied (and threatens further levy) under the questionable order, and petitioners have (in good faith) assumed the order to be nonappealable (thus allowing their time to appeal to expire while seeking an extraordinary writ), a court of justice will not deny relief on such a technical ground as urged by the real parties in interest.

*Were petitioners required to appear for their depositions?*

▆▆ The order under review purports to impose sanctions on petitioners for their alleged "failure to appear on December 30, 1963, and on January 13, 1964, after being served respectively with Notice of Taking Deposition and Subpena re Deposition. . . ." By its express terms, that order was beyond the jurisdiction of the court as to any one or more of the three petitioners who was not legally required to attend such depositions. Its language indicates that each of the three petitioners received both subpena and notice of taking his deposition on each of the two dates set forth therein. Such is an incorrect interpretation of the facts. Lund received neither subpena nor notice. In fact, his deposition was not contemplated. As the attorney for a party whose deposition is to be taken, he had a right to attend with his client, but was under no compulsion to do so. Thus, as to him, the court had no jurisdiction to levy a sanction for his "failure to appear."[5] Brunner and Tice each received a subpena to appear for deposition on January 13, 1964. If such subpena was valid and properly served, it could require their respective attendance on that date. But neither could thereby be required to attend on December 30, 1963. As to that date, nothing was served on Tice, and Brunner received only a notice of taking deposition in his capacity as attorney for the defendant in the principal action. That document did not require his attendance.[6] Thus, insofar as the sanction pur-

---

[5]Whether the court would have had jurisdiction to impose a sanction upon him under paragraph (iv) of subdivision (b)(2) of section 2034 of the Code of Civil Procedure (sanction against an attorney who advises a *party* to disobey an order of discovery) is moot, since the court did not predicate its order on such a hypothetical situation.

[6]Being neither party to the record, nor an officer, director or managing agent of such a party, or a person for whose immediate benefit the

ported to be for failure on both dates set forth in the order, it was beyond the jurisdiction of the court as to all three petitioners. Only insofar as their failure to appear on the January date was concerned could the court conceivably be deemed to have had jurisdiction to impose sanctions, and then only as to Brunner and Tice.

Even as to the latter (the obligation of Brunner and Tice to appear on the January date) there are grave questions. Ordinarily, the law does not contemplate deposition of the attorney of record of a party (in this case Brunner). Furthermore, the ambiguity appearing on the face of each subpena (requiring the deponent to appear in the City of Los Angeles, County of Orange) may have been sufficient to excuse nonappearance. Likewise, the failure to give any party to the principal action any notice that the contemplated depositions were to be taken may be argued as a valid ground for refusal to appear. It can be argued that failure to give notice results only in an inability to use the deposition at trial. But, on the other hand, a more convincing argument may be made, arriving at a contrary result. If a party were allowed to compel an independent witness to give his deposition, all without notice to the opposing party, a situation not contemplated by the discovery statutes would result. For then a party might resort to all manner of discovery without adequate protection to his opponent, so long as he intended to forego any formal introduction of the material at time of trial. This would present an intolerable situation. But in the instant case we need not reach the question of whether this, or any other, defect in the service of the subpena justified the failure of Brunner or Tice to appear on January 13th. If they believed that the subpena was defective for any reason, they had ample opportunity to bring the question before the court on motion to quash service thereof. This they failed to do. As a consequence, we refrain from deciding whether they were excused from attendance on that date. We may assume, for the purposes of this case only, that the proceedings commenced by plaintiffs required petitioners Brunner and Tice to appear for their depositions on January 13th, but not on December 30th, and did not require petitioner Lund to appear on either date. But such determination does not dispose of the matter; for their failure to appear on

action was prosecuted or defended, his presence could only be required by personal service of a valid subpena (Code Civ. Proc., § 2019, subd. (a)(4)).

that date only gave the plaintiffs the right to proceed as provided by pertinent statute. This, as will be seen, they failed to do.

*Did respondent court acquire personal jurisdiction?*

■ When the discovery statutes were adopted in 1957 (Stats. 1957, ch. 1904, p. 3322 et seq.) it was contemplated that the new procedures, many of which were to be accomplished without prior court order, would require enforcement by the court when recalcitrant attorneys or parties failed to comply. For that reason, section 2034, dealing with the refusal to make discovery and its consequences, was included.

■ Thereby the Legislature provided the exclusive mechanics for imposing sanctions for failure to comply with valid requests for discovery. Those sanctions include such penalties as presumptions of fact contrary to the interest of the defaulting party, striking of pleadings, payment of costs, and various other forms of relief which may be just and equitable under the particular facts presented. Because the request or demand for discovery is ordinarily made without previous court order, failure or refusal to comply becomes an act or omission over which the court has no immediate or present control. For that reason the statute contemplated that (1) the defaulting party be brought before the court, (2) an order be made directing him to comply, and (3) an order imposing sanctions be made only after disobedience of the order directing compliance (Code Civ. Proc., § 2034, subd. (a), and subd. (b)(2)).[7] The manner of bringing the defaulting party before the court, in the first instance, is by notice of motion (*id.*). But the code section specifically limits notice of motion as the proper procedure to institute sanctions against parties (including their officers, directors, superintendents, members, agents, employees, and managing agents), and persons for whose immediate benefit the action is brought or defended (*id.*, subd. (b)(2)), or against deponents who have subjected themselves to court jurisdiction by appearing

[7]The only exceptions to the requirement of precedent motion and order are applicable to (1) the sanctions provided for a *party's* sworn denial of the genuineness of a document or truth of a fact which is thereafter proven to be true (subd. (c)), and (2) the sanctions provided for the willful failure of a *party* to appear for deposition after valid notice thereof or willful failure to serve answers to interrogatories properly requested (subd. (d)). In each such instance, the court already has jurisdiction of the party, and the sanction provided is peculiarly applicable only to a party.

for deposition and thereafter refuse to answer proper questions (*id.*, subd. (a)).[8] When the proposed sanction is for the refusal of a nonparty witness to obey the command of a subpena duly issued and served, or for the failure of any person properly brought before the court to obey an order made to compel discovery, the court has no power to proceed in any manner other than as in a contempt (*id.*, subd. (b)(1)). In order that there could be no question in this regard, the Legislature added sections 1991.1 and 1991.2 to the Code of Civil Procedure in 1959. ■ Those sections dispensed with the necessity of a prior court order directing attendance, and in lieu thereof provided that the procedure set forth in section 2034 (proceedings as in a contempt) shall be the exclusive method of dealing with refusal or failure to obey the command of a subpena to take a deposition. Presumably, this change was made in order to give the court jurisdiction of the alleged contemner. ■ Unless the court proceeds as in contempt, it has not obtained jurisdiction of a person who is not a party to the action before it, and who has not already appeared as a witness. This is the clear meaning of the statute.

It is axiomatic that a court may not punish a contempt committed out of its presence without a full hearing at which the alleged contemner appears by reason of arrest under a warrant, or at which he has the opportunity to appear by reason of personal service of an order to show cause (Code Civ. Proc., §§ 1211, 1212). Neither warrant nor order to show cause may issue except on proper affidavit setting forth the full facts of the alleged contempt (same sections, see also *In re Ny,* 201 Cal.App.2d 728 [20 Cal.Rptr. 114]). ■ The purported notice of motion served in the instant case was not such process as is contemplated by the statutory provisions on contempt. Even if it had been properly served on the individual petitioners (which it had not), it would not have required any of them to appear in court. It would merely have furnished them with information that plaintiffs were about to request the court for certain orders to which they

---

[8]In some instances the statute provides that the court, when passing upon a motion to order compliance with a request for discovery, may direct the losing party to pay the costs of his opponent. But such jurisdiction is expressly limited to ordering payment of the cost of bringing or defending such motion, and does not include the right to order payment of costs incurred by reason of failure to make discovery prior to an order directing the same. (See various subdivisions of Code Civ. Proc., § 2034.)

were not entitled under the circumstances. Because they were not parties to the action in which the notice was entitled (and were not members of the several classes as to whom such a notice is made operative), the court obtained no jurisdiction of their persons by reason thereof. They advised the court (by letter in advance of hearing) of this fact, stating further that they had no standing to appear at the motion. Of course, it would have been better practice to have arranged for the presence of counsel to appear specially for the sole purpose of objecting to jurisdiction. But the failure to take such step did not give the court jurisdiction when it had none, and did not cure any of the other defects in the attempted proceeding.

*Did the court have jurisdiction of the subject matter?*

Even if we were to assume, contrary to fact, that in some manner the respondent court obtained jurisdiction of the persons of the petitioners (or any of them), there are several reasons why its attempted order exceeded its jurisdiction.

It could be argued that it lost its entire jurisdiction of the subject matter upon granting the motion to dismiss for lack of prosecution within five years. But here the court made the purported order imposing sanctions and the order of dismissal in the same minute order. In order to accomplish such, it had continued the motion to dismiss to be heard with the motion for sanctions. Of course, the court is not compelled to hear a motion to dismiss on the date on which it is made; but it could be argued that its order granting the dismissal should date back to the time of motion. Such would appear consistent with the fact that dismissal by reason of lapse of five years (other than in the event of certain specified exceptions which do not exist here) is mandatory. (*Adams* v. *Superior Court,* 52 Cal.2d 867 [345 P.2d 466]; see also *Turnbull* v. *Superior Court,* 126 Cal.App. 141 [14 P.2d 540].) But we need not decide this question for the reason that other, and more compelling, reasons exist which indicate that the subject matter of the order was beyond the jurisdiction of the respondent court.

In providing that failure to obey subpena to take deposition shall be punishable as a contempt, the Legislature clearly distinguished between the consequences of that act and the consequences of those defaults which lead to other sanctions. The former provision is to be found by itself in one subdivision of the code section; the balance are grouped in another subdivision. Historically, a contempt is punishable

by imprisonment or fine, for it is an act in defiance of the dignity of the court. It is not of the same nature as those acts and omissions which are merely in derogation of the rights of the opponent, and which may be met with orders calculated to indemnify the aggrieved party. We have been cited to no authority which indicates that the punishment for a contempt may include the payment of money to private individuals. Insofar as the order attempted to require such payments, it exceeded the court's power to punish as a contempt.

It also appears that respondent court purported to compensate plaintiffs' attorneys far in excess of anything contemplated by those provisions of section 2034 which authorize payment of costs. Even if this were not a situation wherein the only punishment may be as in a contempt (which it is), the provisions of the statute contemplate only that a defaulting party may be assessed the costs of bringing the motion, including attorneys' fees. Such provisions might, in a proper case and upon a proper showing, authorize the $350 award. But the balance of the award (an additional $1,100) was stated to be the costs for the time of two attorneys and one court reporter who stood by to take a deposition which they had been told would not be attended by the witnesses (and for which they served subpenas after being advised that the court had lost jurisdiction because of the lapse of five years). There are at least three reasons why that award was improper.[9] The first is that the code does not authorize payment of that type of cost as a sanction for refusal to make discovery. The second is that $1,100 is an arbitrary figure, for which no evidence of justification was offered, and which appears to be fairly high compensation for two hours' time during which no one was required to do anything. The third is that the attorneys to whom the award was made have not shown good faith in either attempting to take the depositions in the first instance, or in standing by for two hours when advised, in advance, that the witnesses would not attend.

Let a peremptory writ issue prohibiting respondent court from taking further proceedings herein except to recall its writ of execution.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.

[9] All in addition to the fact that it appears that petitioners were not offered an opportunity to purge themselves of the claimed contempt.