[Civ. Nos. 12295, 12301, Third Dist. July 20, 1970.]

ELIZABETH FREIDBERG, Plaintiff and Appellant, v.
EDWARD FREIDBERG, Defendant and Appellant.

(Consolidated Appeals.)

## COUNSEL

Lewis & Hendry, Jerome Lewis and Anthony Dick for Plaintiff and Appellant.

Cooper & Brodovsky and William Brodovsky for Defendant and Appellant.

## OPINION

**MUNDT, J.** * — In 3 Civil 12295, plaintiff Elizabeth Freidberg (hereinafter referred to as Elizabeth) has filed this appeal following a summary judgment entered in behalf of her former husband, the defendant, Edward Freidberg (hereinafter referred to as Edward).

On May 15, 1969, pursuant to stipulation of counsel, the foregoing appeal was ordered to be consolidated with 3 Civil 12301, to be discussed hereinbelow.

### 3 Civil 12295

Elizabeth married Edward on April 19, 1962, at which time he was a young lawyer in a new law business. The couple separated on February 9, 1966, and on April 5, 1966, a divorce was granted Elizabeth in Sacramento County. Prior to the divorce, Edward had attorneys representing him draw up an integrated property settlement agreement which purported to dispose of all of the community and separate property of the parties. It is this property settlement which is in controversy in these proceedings, Elizabeth having moved to set aside the settlement on the grounds that it was procured by fraud of Edward and requesting a complete accounting of all the community assets of the parties at their true values, awarding to plaintiff a fair and equitable share of the community property and awarding plaintiff judgment against defendant for the value of said share of the community property. Edward moved for a summary judgment. The motion was granted and a summary judgment was entered. It is from this judgment that Elizabeth takes her present appeal.

Elizabeth alleges that at the time of the agreement she was under Edward's domination and emotionally dependent upon him, and that she executed the agreement relying upon the defendant's represenations as to

*Assigned by the Chairman of the Judicial Council.

the value of the community property of the parties. Edward was, according to the complaint, wholly unmindful of his duty toward her to act fairly and candidly in the division of their joint property and did grossly defraud and deceive her as to its amount, nature and value. In so doing, Edward knowingly concealed the true, substantially greater values of community property, specifically, the true value of the community interest in the husband's law practice, which plaintiff is informed and believes, and therefore alleges, was of a value in excess of $200,000 at the time of the execution of the agreement. Plaintiff further alleges that she would not have executed the agreement had she been fully and accurately informed of the value of the community property of the parties and had she not been under the domination of the defendant. She asserts she did not discover the fraud of defendant until on or about January 18, 1967. Plaintiff further asserts in paragraph VII of her complaint as follows: "That prior to February 25, 1966, Defendant caused his attorneys to draft the Integrated Marital Settlement Agreement which is attached hereto and incorporated herein as Exhibit A. That thereafter Defendant represented to plaintiff that said agreement set forth all the community assets of the parties hereto at their true value, and specifically represented to Plaintiff that the community interest in defendant's law practice was not more than $22,000." The integrated marital settlement agreement was incorporated in and adopted as part of the complaint; in paragraph III of the agreement the parties agree that they were then possessed of the following community property: ". . . (j) That portion of the law practice of Edward P. Freidberg including all furniture, fixtures, goodwill, books, equipment, law office bank accounts with the Bank of California and receivables acquired subsequent to marriage."

The practice was conveyed to Edward but the agreement did not set forth its value; neither did it set forth the value of any of the other various articles of property—and there were many—unless it had been liquidated. On July 7, 1967, during a deposition which was taken in Seattle, Washington, Elizabeth informed counsel that it was not true that Edward ever represented to her that the community interests in defendant's law practice was not more than $22,000. He did not, according to her deposition, state any figure: "He just insisted that I had no community interest in the law practice." It is suggested that this statement, under oath, is not consistent with the allegations of her complaint.

Her deposition also reveals that the property settlement agreement was handed to her some seven weeks before it was finally executed and that she was instructed by Edward to take the agreement to some attorney out of town in order that he might advise her in relation to it and to assure

that she was properly advised in the premises. She took the document to attorney Schwarz of San Francisco, a man with whom she had been acquainted. She asserts in the deposition that when she took the document to Mr. Schwarz she was still under the dominance of Edward, although she does not assert that Edward told her to go to this particular lawyer, since this man was a personal friend of hers, who was not acquainted with Edward. She told Mr. Schwarz that she had no interest in the law practice, a position with which he disagreed. She elected, however, to rely on Edward's advice to her that she had no interest in the law business.

The deposition of Mr. Peter Schwarz, a San Francisco attorney, was taken on September 22, 1967. Mr. Schwarz, first being sworn, testified that he has been an attorney since 1963 and that he had been acquainted with Elizabeth probably off and on for 10 years. He had never represented her, however. He saw her during the month of February 1966 at his office. She had a marital settlement agreement she wanted him to look over; she inquired concerning the agreement, which he examined, discussing the various items of community property and what Elizabeth would be receiving and Edward would be receiving. They discussed the law practice. The lawyer was informed by Elizabeth that her husband was an excellent trial attorney and that he had made quite a success of himself during the short duration of his practice. Mr. Schwarz informed Elizabeth that the practice would be community property, at least from the time she got married. He identified the property settlement agreement and addendum to the agreement as being those which were left with him by Elizabeth at the time of the visit. The earnings of the practice were not discussed except to the general effect that he was doing very well. He had not seen the woman for some several years prior to the date of the visit. She did appear physically the same. During the discussion she was alert. She understood what they were talking about and was an intelligent person. On February 21, 1966, Mr. Schwarz wrote Elizabeth in part as follows: "Although we may concede that the division of the existing property is favorable to you, you must realize that you are foregoing prospective community interests in an expanding, apparently prosperous law practice, as well as your community share of unliquidated receivables presently in the office. You are in a better position than I am in determining the monetary value of this concession." Elizabeth was in possession of this letter and was aware of its contents when she signed the agreement. In fact, a suggestion by Mr. Schwarz also embodied in the letter recommending a provision that she be awarded attorney fees in the event an action was brought to enforce the agreement, was adopted in an addendum to the agreement. Other changes favorable to Elizabeth were incorporated in the agreement at her request.

In evaluating the factual averments with respect to the applicable law which will be discussed later, we must keep in mind that running through the case are the allegations by Elizabeth of her domination by Edward, her emotional dependence upon him, and that she acted in reliance on his representations in respect to the value of the community property of the parties. She accuses him of concealing the true, substantially greater values of the community property, specifically, the true value of the community interest in Edward's law practice. It also must be kept in mind that during January and February of 1966, when the agreement was prepared and executed, Edward repeatedly attempted to persuade Elizabeth to seek psychiatric treatment, as a result of which she became emotionally distraught and dependent upon Edward. These are her averments. Her allegations find support in her deposition where it is revealed that she was in the care of a psychiatrist and in a hospital during both 1965 and 1966 because of a mental illness. These asserted illnesses and emotional factors must be considered in determining whether or not there was, or is, a triable issue.

Edward has filed his affidavit in support of his motion for summary judgment, stating he restricts his practice to the representation of plaintiffs in personal injury litigation, and that by reasons of the ramifications thereof, it is difficult to evaluate such a practice. He avers that he did not at any time represent or indicate to Elizabeth that she had no community property interest in his law practice. He asserts that he did indicate to her that she did in fact have a community property interest in the law practice but that he was unaware of the dollar value of that interest.

On October 29, 1968, Elizabeth filed a notice of motion for leave to amend her complaint on the grounds that the amended pleadings would correct a mistake of fact that was not known to the pleader at the time the complaint was filed and that said amendment would be in furtherance of justice and state the true facts. This motion was prepared and signed by Mr. George P. Hendry. With that motion Elizabeth filed her proposed amendment to the complaint to the following effect: "That prior to February 25, 1966, defendant caused his attorneys to draft the Integrated Marital Settlement Agreement which is attached hereto and incorporated herein as Exhibit A. That thereafter defendant represented to plaintiff that said agreement set forth all the community assets of the parties hereto at their true value, and specifically represented to plaintiff that the community interest in defendant's law practice was of no value." The essential difference between this and the original allegation is the $22,000 figure. She asserted the property *did not have* value in excess of that amount. The sum presently alleged, "no value," is in fact within the value first alleged.

■ The right of a party to amend to correct a misstatement of facts when it appears the error was a result of a mistake or inadvertence cannot be denied. ■ A party should be allowed to correct a pleading by omitting an allegation which, it appears, was made as the result of a mistake or inadvertence. (*Lamoreux* v. *San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617 [311 P.2d 1]; *Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376 [267 P.2d 257]; *Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822 [69 Cal.Rptr. 321, 442 P.2d 377].) This rule was applied to an unverified complaint in *Reichert,* the court stating: ". . . we feel that the principle underlying the above authorities is applicable here. As we have said, plaintiff alleged in his original complaint that he was adjudicated a bankrupt . . .; this was a fact peculiarly within his own knowledge." (68 Cal.2d at p. 836.) As stated above in *Reichert,* a party should be allowed to correct a misstatement of fact in a verified complaint when it appears that error was the result of mistake or inadvertence.

The right to amend in this context is discussed in *Macomber* v. *State of California* (1967) 250 Cal.App.2d 391 [58 Cal.Rptr. 393], at page 399, wherein the court stated: "This is not a situation where the contradiction of the original allegation carries with it the onus of untruthfulness. . . .

"Rules of pleading are conveniences to promote justice and not to impede or warp it. We do not question the rule that all allegations of fact in a verified complaint, which are subsequently omitted or contradicted, are still binding on the complainant. The rule is valid and useful, but it does not exist in a vacuum and cannot be mechanically applied. It is a good rule to defeat abuses of the privilege to amend and to discourage sham and untruthful pleadings. It is not a rule, however, which is intended to prevent honest complainants from correcting erroneous allegations of generic terms which may have legal implications but which are also loosely used by laymen or to prevent correction of ambiguous statements of fact (*Avalon Painting Co.* v. *Alert Lbr. Co.,* 234 Cal.App.2d 178, 185 [44 Cal.Rptr. 90])."

■ It must be recalled that the court on a motion for summary judgment does not try issues, but merely determines on the basis of the affidavits of the parties whether there are factual issues to be tried. (*Zancaner* v. *Louisville & Nashville R.R. Co.* (1963) 220 Cal.App.2d 836 [34 Cal.Rptr. 143]; *Walsh* v. *Walsh* (1941) 18 Cal.2d 439 [116 P.2d 62].) ■ Because summary judgment is a drastic procedure, it should be approached with caution and the affidavits opposing the motion should be liberally construed while those of the moving party must be strictly construed. (*Walsh* v. *Walsh, supra; Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257].) The purpose of the summary judgment procedure has also

been described as "to determine whether the issues presented by the pleadings actually are triable issues . . . ." (*Craig* v. *Earl* (1961) 194 Cal.App.2d 652, 655 [15 Cal.Rptr. 207], citing *Coyne* v. *Krempels,* 36 Cal.2d 257, 262 [223 P.2d 244].) ■ This purpose is accomplished in the presentation of proposed evidence by affidavits (Code Civ. Proc., § 437c; *Dudum* v. *City of San Mateo* (1959) 167 Cal.App.2d 593 [334 P.2d 968]) which are liberally construed in favor of the party resisting the motion, to the end that he will not be summarily deprived of the full hearing available at a trial of the action and the rights incident thereto. ■ The inquiry must be directed to the issues raised by the pleadings. (*Family Service Agency* v. *Ames* (1958) 166 Cal.App.2d 344 [333 P.2d 142].) ■ The counteraffidavits filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings; are not a substitute for an amendment to the pleadings; and are an ineffective defense to the motion unless they set forth facts showing that a good cause of action exists upon the merits. (Code Civ. Proc., § 437c; *Craig* v. *Earl, supra,* 194 Cal.App.2d at p. 656.)

As we have seen, Elizabeth's complaint, prepared in Sacramento and signed by her in Seattle, Washington, in the absence of counsel, alleges that defendant (Edward) represented to plaintiff (Elizabeth) that said agreement set forth all the community assets of the parties hereto at their true value and specifically represented to plaintiff that the community interest in defendant's law practice was not more than $22,000. The position set forth in her deposition and which may be considered in evaluating this action was to the general effect that Edward made no representation to her of $22,000 or any other figure of what the value of the practice was. He did not state any specific figure. She was asked, "To the best of your recollection, to sum it up, he never at all stated to you any value as to the community interest in his law practice?" Answer: "He just insisted that I had no community interest in the law practice." Referring to the allegations to her complaint, when asked if they were not incorrect, she replied: "Well, not specifically, Mr. Brodovsky. It says in this agreement that as consideration for the above—I am sure this is the way my attorneys interpreted it—that in further consideration for my giving up my interest in the law practice that I would receive a certain amount per month and I assumed that this is what they drew from that."

■ The court was not privileged to order a summary judgment under the circumstances of this case when we recall the allegations of the plaintiff concerning her mental and emotional condition during the period the transaction was being consummated. It appears clear that she should have her day in court. ■ Her proposed amendment to her complaint should

be permitted. ▇ Neither the trial court nor this court may weigh the evidence. Our function ends when we determine that there is or is not a triable issue. In reaching this conclusion we express no opinion on the merits of the case, nor do we pass on the truth or falsity of any of the facts which have been pleaded. We merely decide there is a triable issue which compels a trial to determine that issue.

The summary judgment will be reversed as hereinafter provided.

### 3 Civil 12301

During the presummary judgment maneuverings in this litigation, Elizabeth attempted to depose Edward and he failed to answer several questions. Elizabeth then moved for an order to compel answers. The court determined the question adversely to Edward and ordered him to answer questions numbers 5, 6, 7 and 8. The order also required him to pay $100 as fees to Elizabeth's attorney, plus costs. The order was dated August 15, 1968.

On January 3, 1969, Edward filed a notice of appeal, which reads in part as follows:[1]

"YOU WILL PLEASE TAKE NOTICE that Defendant and Cross-Appellant EDWARD FREIDBERG does hereby appeal to the District Court of Appeal of the State of California, Third Appellate District, from that portion of the judgment and [sic] entered herein on August 15, 1968, in favor of Plaintiff's attorneys and against Defendant and Cross-Appellant pleading as follows:

" 'IT IS FURTHER ORDERED that Defendant shall pay to LEWIS & HENDRY, Attorneys for Plaintiff, the sum of $100.00 as and for attorneys' fees herein.' "

### Basis on Which Edward Appeals

▇ (1) The court made no finding that Edward's refusal to answer was without substantial justification pursuant to Code of Civil Procedure section 2034, subdivision (a), and

---

[1]Page 3 of appellant's opening brief reads in part as follows: "Defendant appealed the order imposing sanctions in the above Court in Action 3 Civil No. 12,070. Plaintiff moved to dismiss the appeal on the basis that it was premature since the final judgment on the underlying action had not yet been entered. This Court dismissed the Plaintiff's [sic] appeal.

"Defendant obtained a summary judgment against Plaintiff on her complaint for rescission. (C.T. Plaintiff's Appeal 197) Judgment was entered on December 12, 1968. (C.T. Plaintiff's Appeal 225) Defendant again appealed from the order and judgment of August 15, 1968 by filing a notice of appeal on January 3, 1969. (C.T. Defendant's Appeal 33)"

(2) Appellant did in fact have substantial justification on which to refuse to answer.

However, we cannot reach the questions raised by Edward. The extraordinary writs of mandamus and prohibition are the proper remedies to review discovery procedure. (*Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 216 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; *Flora Crane Service, Inc.* v. *Superior Court* (1965) 234 Cal.App.2d 767, 775 [45 Cal.Rptr. 79]; *Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 121 [54 Cal.Rptr. 721].)

Here, however, Edward purports to appeal from a superior court minute order imposing sanctions. In *Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 708-710 [39 Cal.Rptr. 891, 394 P.2d 707], the Supreme Court considered the appealability of an order imposing sanctions in discovery proceedings. The court concluded: "The better view is that an order made for the purposes of furthering discovery proceedings, *or granting sanctions for refusal to make discovery*, is not appealable [Citations]." (P. 709.) (Italics added.) The court continued: "prohibition is an appropriate remedy to circumvent the imposition of sanctions applied in excess of the . . . court's jurisdiction . . . ." (P. 709.)

In *Munson* v. *Singer* (1965) 238 Cal.App.2d 697 [48 Cal.Rptr. 167], the court quoted the above excerpt from page 709 of *Lund* with approval and concluded that a purported appeal from an order imposing sanctions should be dismissed. (See also *Jacuzzi* v. *Jacuzzi Bros., Inc.* (1966) 243 Cal.App.2d 1, 13, 24 [52 Cal.Rptr. 147]; Louisell, Modern California Discovery (1963) § 5.22, pp. 145-146.)

The appeal in 3 Civil 12301 is dismissed.

The summary judgment in 3 Civil 12295 is reversed and the trial court is directed to permit the filing of the amended complaint by plaintiff.

Pierce, P. J., and Regan, J., concurred.