[No. B142626. Second Dist., Div. One. Sept. 28, 2000.]

CEDARS-SINAI IMAGING MEDICAL GROUP, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SHEILA G. MOORE, Real Party in Interest.

**1282**

COUNSEL

Law Offices of Barry B. Kaufman and Barry B. Kaufman for Petitioner.

Frances L. Diaz for Real Party in Interest.

No appearance for Respondent.

**OPINION**

**VOGEL, (Miriam A.), J.**—By judgment, a director was given the right to inspect a corporation's books and records. Dissatisfied with the corporation's compliance, the director asked the trial court to issue an order directing the corporation to show cause why it should not be held in contempt. Although the trial court stated its intent to issue an order to show cause, and although the court set a date for the contempt hearing, an order to show cause was never issued. The trial court nevertheless denied the corporation's request for a continuance, conducted a "default" contempt hearing, found the corporation in contempt, imposed a fine of $1,000, and ordered the corporation to pay the director's attorneys' fees (more than $45,000). As we explain below, the court had no jurisdiction to do what it did. Its orders are void.

FACTS

Sheila G. Moore, M.D., a radiologist, was a shareholder, director and employee of Cedars-Sinai Imaging Medical Group, a professional corporation. In 1999, at a time when Dr. Moore was the subject of a "peer review investigation," she attempted to exercise her right to inspect and copy the Group's corporate records. (Corp. Code, § 1602.) The Group objected, and on July 1, Dr. Moore filed a petition for a writ of mandate in which she asked the trial court to enforce her inspection rights. Over the Group's opposition, the trial court granted Dr. Moore's petition, entered a judgment (on August 10, 1999), and issued a writ of mandate (on August 16) ordering the Group to produce specified corporate records.

On October 18, the Group terminated Dr. Moore's employment. Dr. Moore contested her termination and the dispute was arbitrated before the Honorable G. Keith Wisot, retired, who (on November 3) resolved the matter against Dr. Moore. Around that time, the Group produced most of its books and records, save some that were in the hands of the arbitrator and others that were, in the Group's view, subject to a claim of attorney-client privilege. Dissatisfied, Dr. Moore served the Group with a deposition subpoena. The Group moved, successfully, to quash the subpoena, the trial court finding that, "[a]bsent the initiation of a contempt proceeding to enforce the judgment," there was no action pending and, therefore, no basis for discovery.

On January 11, 2000, Dr. Moore filed a "notice of motion and motion for issuance of an order to show cause re contempt." Over the Group's opposition and after a brief hearing held on January 26, the trial court stated orally

that it would hold a hearing on an order to show cause, and it thereafter issued a minute order to the same effect. As relevant, the minute order states: "[Dr. Moore's] Application for an Order to Show Cause re Contempt is granted. [¶] [The Group] is ordered to Show Cause why it should not be held in contempt of this court for its refusal to produce books and records as ordered by the Writ of Mandate issued by this court on August 16, 1999." The minute order recited Dr. Moore's burden (to prove the contempt beyond a reasonable doubt), the Group's rights (to confront and cross-examine witnesses and so on), and the date of the contempt hearing (March 28, 2000).[1] At the end, it states, "Notice is waived." We have examined the superior court file and have determined for ourselves that it does not include a proof of service of the January 26, 2000, minute order.

On March 20, the Group's lawyer, Barry B. Kaufman, a sole practitioner, asked the trial court to continue the March 28 contempt hearing for a few days, explaining that he had to start a two-day trial in San Francisco on March 27. The court refused to consider the request at that time. Mr. Kaufman renewed his request on March 22, explaining that, at the time he had agreed to the March 28 date, he had good reason to believe the San Francisco matter would be postponed. As it turned out, he was wrong. He gave the court the name and number of the San Francisco case. Dr. Moore opposed the request for a continuance.

The trial court denied Mr. Kaufman's request for a continuance, commenting that the court does not "allow lawyers to schedule themselves into conflict and then continue one of the matters when one . . . of their cases doesn't settle. The reason we don't do that is because it gives our trial dates no credibility when we do that. And it is ineffective calendar management." When Mr. Kaufman apologized and asked the court for mercy, the court said, "You don't have to apologize, Mr. Kaufman. It's just that it's not good cause for a continuance. That's the problem." Although Dr. Moore's lawyer asked the trial court to order Mr. Kaufman to appear on March 28, the court did not respond to her request.

On March 27, Mr. Kaufman appeared in the San Francisco case, which was not concluded that day, and Mr. Kaufman was ordered to return on March 28. On the same day, at Mr. Kaufman's request, the judge in the San Francisco case had his clerk call the Los Angeles Superior Court to confirm

---

[1]The delay (from January to March) was at Dr. Moore's request (she said she needed time to conduct discovery). When the Group's lawyer asked for an earlier date, the court asked if the delay would cause prejudice. When counsel was unable to identify any particular prejudice, the court set the hearing for March 28.

to the trial court that Mr. Kaufman was "engaged up there." When this case was called on March 28, Dr. Moore's lawyer announced her appearance. There was no appearance for the Group. The trial court noted the call from the San Francisco court, then continued thus:

"[A]s I explained to Mr. Kaufman when he was last here, I don't think that he's entitled to schedule himself to be in two places at one time and then demand a continuance of one of those hearings when he scheduled himself into the conflict because he couldn't be in two places at once." The court then went forward with the contempt hearing. At the conclusion of the hearing, the court asked counsel for the signed order to show cause. Dr. Moore's lawyer said she "did a notice of ruling and served everybody pursuant to the court's instruction" (as noted above, notice was waived and the file does not contain a proof of service of the minute order or, for that matter, a notice of ruling). The court said it did not want a notice of ruling but nevertheless proceeded to find the Group in contempt. Dr. Moore's lawyer was directed to prepare written findings and an order, and the issue of penalty was deferred to April 14.

On March 30, 2000, the trial court signed and filed a formal judgment of contempt in which it recited its finding that, "with full knowledge that the trial was to be held," the Group had voluntarily absented itself from the hearing. Based on the testimony of Dr. Moore's lawyer, the court found that, with knowledge of and the ability to comply with the judgment, the Group had willfully disobeyed the judgment by refusing to produce specified documents. The Group's petition to us for a writ of mandate was denied and the penalty hearing went forward on April 14. Mr. Kaufman again begged for mercy for his client, tried to explain the defense he would have presented had he been present at the contempt hearing, and asked the court to sanction him ("for the error [he] made in calendaring") rather than his client. The trial court warned Mr. Kaufman that his comments were contemptuous, denied his request, and ordered the Group to pay Dr. Moore's attorneys' fees (in an amount to be determined at a later date) and a fine of $1,000, with execution stayed to give "the contemnor a final opportunity to furnish the documents as ordered by the court."

On May 2, the court found the "contempt ha[d] been purged by production of [the] documents . . . ." On May 12, the court ordered the Group to pay Dr. Moore's attorneys' fees ($45,375) and costs ($92). The Group's subsequent motions for a new trial and for relief from entry of the contempt

judgment (Code Civ. Proc., § 473) were denied.[2] The trial court rejected Mr. Kaufman's affidavit of fault, finding that his decision to attend the San Francisco trial rather than the contempt hearing in this case was an intentional act, not a product of negligence or mistake. The Group then filed a petition for a writ of mandate in which it asked us to intervene. We issued an order to show cause and set the matter for hearing.

## DISCUSSION

■ It is undisputed that, despite the trial court's apparent intent to issue an order to show cause, a signed order was never issued. As a result, the court's orders made after January 26, 2000, are void.[3]

A contempt proceeding is commenced by the filing of an affidavit and a request for an order to show cause. (§ 1211, subds. (a), (b).)[4] After notice to the opposing party's lawyer, the court (if satisfied with the sufficiency of the affidavit) must sign an order to show cause re contempt in which the date and time for a hearing are set forth. (§ 1212; *Arthur v. Superior Court* (1965) 62 Cal.2d 404, 408 [42 Cal.Rptr. 441, 398 P.2d 777] ["an order to show cause must be issued"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1999) ¶ 9:715, p. 9(II)-47.)[5] The order to show cause acts as a summons to appear in court on a certain day and, as its name suggests, to show cause why a certain thing should not be done. (*Morelli v. Superior Court* (1968) 262 Cal.App.2d 262, 269 [68 Cal.Rptr. 572].) Unless the citee has concealed himself from the court, he must be personally served with the affidavit and the order to show cause; *otherwise,*

---

[2]Undesignated section references are to the Code of Civil Procedure.

[3]This issue was not addressed by the parties. When we realized there was no order to show cause, we requested and received further briefing. (Gov. Code, § 68081.)

[4]We are, of course, talking about indirect contempts (those that are *not* committed in the immediate view and presence of the court), not direct contempts (those that are committed in the immediate view and presence of the court). (See § 1211, subd. (a); *Reliable Enterprises, Inc. v. Superior Court* (1984) 158 Cal.App.3d 604, 611 [204 Cal.Rptr. 786], disapproved on other grounds in *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1248, fn. 13 [265 Cal.Rptr. 144, 783 P.2d 731].)

[5]In the archaic language of section 1212, "[w]hen the contempt is not committed in the immediate view and presence of the court or judge, a warrant of attachment may be issued to bring the person charged to answer, or, without a previous arrest, a warrant of commitment may, upon notice, *or upon an order to show cause,* be granted; and no warrant of commitment can be issued without such previous attachment to answer, or such notice or order to show cause." (Italics added.) As our Supreme Court explained in *Lund v. Superior Court* (1964) 61 Cal.2d 698, 713 [39 Cal.Rptr. 891, 394 P.2d 707], it "is axiomatic that a court may not punish a contempt committed out of its presence without a full hearing at which the alleged contemner appears by reason of arrest under a warrant, or at which he has the opportunity to appear by reason of personal service of an order to show cause . . . ."

*the court lacks jurisdiction to proceed.* (§ 1015 [in civil actions in which a party is represented by an attorney, "the service of papers, when required, must be upon the attorney instead of the party, except service of subpoenas, of writs, and other process issued in the suit, and of papers to bring him into contempt"]; see also § 1016; *Arthur v. Superior Court, supra,* 62 Cal.2d at p. 408; and see Weil & Brown, *supra,* ¶ 9:716, p. 9(11)-47.)[6]

In contempt, "there is no presumption in favor of the regularity of the proceedings insofar as jurisdictional defects are concerned," and the existence of jurisdiction must be affirmatively shown. (*Kroneberger v. Superior Court* (1961) 196 Cal.App.2d 206, 209 [16 Cal.Rptr. 339].) Here, it is plain that the trial court acted without jurisdiction. It did not issue or sign an order to show cause re contempt. As a result, no order to show cause was served on the Group (personally or otherwise). And although a copy of the charging affidavit was at some point before the January 26, 2000, hearing served on the Group's lawyer, the Group was not *personally served* with the affidavit or with any of the papers relevant to the contempt.

It is true, as Dr. Moore points out, that notice was waived at the time of the hearing on her application for the order to show cause—but the notice that was waived by the Group's lawyer has nothing to do with the formalities attendant to contempt proceedings. "Notice waived" means the lawyer waives his right to written notice by opposing counsel of the *lawyer's understanding* of the court's ruling or of further notice concerning a hearing date. (See § 1019.5, subd. (a); cf. *Griffis v. S. S. Kresge Co.* (1984) 150 Cal.App.3d 491, 496-497 [197 Cal.Rptr. 771].) It does *not* mean the lawyer intends to waive his client's right to the issuance of an order to show cause (a) signed by the *judge* and (b) personally served on the citee.[7] Although a contempt may arise, as here, in the context of a civil action, a contempt proceeding is punitive and separate from the cause out of which it arises (*Kroneberger v. Superior Court, supra,* 196 Cal.App.2d at p. 210), and it is for this reason that every "i" must be dotted and every "t" crossed. Had the Group *voluntarily* appeared on March 28, and at that time *presented evidence on the merits* of the charge against it, that appearance might have been a

---

[6]In *In re Morelli* (1970) 11 Cal.App.3d 819, 834-841 [91 Cal.Rptr. 72], Division Five of our court held that service by mail on the citee's attorney of a second, renewed order to show cause re contempt was valid (the citee having been personally served with the original order to show cause). To the extent that *Morelli* can be read as support for the general proposition that an order to show cause re contempt may be served by mail on an attorney of record, we believe the case is wrongly decided. (See 8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 339, pp. 343-344 ["Personal service of the order to show cause on the party charged is a jurisdictional basis of a contempt order"].)

[7]No one would suggest that, by waiving notice of a ruling granting summary judgment, the parties had waived their right to the entry and service of a signed judgment.

valid substitute for personal service. (Cf. *Leonis v. Superior Court* (1952) 38 Cal.2d 527, 531 [241 P.2d 253].) But it didn't, and the waiver of notice of the January 26 ruling cannot rationally be viewed as the equivalent of a waiver of both the issuance and service of an order to show cause.

These jurisdictional defects mean the trial court was acting without jurisdiction at the times it purported (1) to hear and determine the contempt, (2) to punish the Group with the imposition of a fine, and (3) to order the Group to pay Dr. Moore's attorneys' fees and costs. Of course, the court was equally without jurisdiction when it purported to "purge" the contempt on the ground that the Group had complied with its orders. In that regard, however, the undisputed fact of full compliance means this matter is now concluded, and there is no need to consider whether Dr. Moore would be entitled to renew her request for an order to show cause re contempt.

### DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue to compel the trial court to vacate each and every order made in this case after January 26, 2000. The parties are to pay their own costs of these writ proceedings.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied October 24, 2000, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied December 20, 2000. Kennard, J., was of the opinion that the petition should be granted.