[Civ. No. 3242.    Second Appellate District, Division Two.—January 25, 1921.]

## CAVE J. COUTS, Appellant, v. RICHARD O'NEILL, Respondent.

[1] DEEDS—ACTION TO HAVE DECREED TO BE MORTGAGE—EVIDENCE—FINDING.—In this action instituted for the purpose of having two deeds, absolute in form, one superseding the other, decreed to be mortgages, although there was a serious conflict in the evidence upon that issue, the finding of the trial court to the effect that the second deed, which was executed almost five years after the first, was not a mortgage was amply and substantially justified by the evidence.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. B. Cosgrove and Sweet, Stearns & Forward for Appellant.

E. S. Torrance, Eugene Daney and E. Swift Torrance for Respondent.

WORKS, J.—This action was instituted for the purpose of having two deeds, absolute in form, decreed to be mortgages. Judgment went for the defendant and the plaintiff appeals.

The transactions out of which the controversy arises were between the appellant and Richard O'Neill, who, although of the same name with the respondent, was the respondent's predecessor in interest in the land which is the basic subject of the litigation, and who departed this life in 1910. Whenever, in the course of this opinion, Richard O'Neill, or O'Neill, is mentioned, it will be understood that the reference is to the deceased person of that name and not to the respondent.

On November 4, 1895, Richard O'Neill promised to lend appellant the sum of $10,000, and, during the succeeding year, redeemed his promise by advancing to appellant various sums aggregating a little more than the amount named. On October 16 and November 12, 1896, appellant and his

wife executed to O'Neill, in consideration of the loan, their two promissory notes, and they also, on the first-mentioned date, delivered to him their grant deed to certain lands in San Diego County. This instrument is one of those asked by appellant, in his complaint, to be decreed a mortgage, but the litigation is devoid of all interest as far as it is concerned, for it was beyond all question intended by the parties to be a mortgage and the trial court found that it was one.

[1] On October 10, 1901, within a week prior to the expiration of five years from the execution of the deed just mentioned, the appellant executed to Richard O'Neill a second deed, conveying the same property as the first, and it is upon the effect to be given to this second instrument that the appeal turns.

The appellant asks for a reversal of the judgment upon but two grounds, each presenting a question as to the sufficiency of the evidence to support the findings of the trial court. He contends, in the first instance, that the evidence fails to justify the finding that the deed of October 10, 1901, was an absolute conveyance and not a mortgage.

The evidence tending to support the finding, if any such there be, is, then, to be marshaled and considered. The appellant having failed to satisfy the obligation secured by the deed of October 16, 1896, O'Neill took up with Wm. J. Hunsaker, an attorney at law, on September 23, 1901, the matter of his relations with appellant. On the next day Hunsaker wrote Couts: "Mr. O'Neill came up yesterday for the purpose of talking over his business with you. Inclosed you will please find copy of a letter I have this morning written him, which explains itself. Mr. O'Neill declines to take a new mortgage, but is willing to take a deed to the property and give you an option to purchase it within a year. I hope you will be able to find some way out of your present difficulties." The letter to O'Neill, copy of which was inclosed in the letter to appellant, contained the following introductory statement: "In response to your request for a statement as to the amount due from Mr. Cave J. Couts to you, and of the method by which you can take a deed to the property, and give Mr. Couts an option to purchase it within a year from the date of the deed, I beg to say." The letter then set forth a statement of figures and

proceeded: "As I understood you yesterday, you do not feel, under the circumstances like taking a new mortgage, as your notes have now run nearly five years, and there has been no payment on account of principal or interest; but that you are willing to give Mr. Couts an opportunity to repurchase the property within one year and that if Mr. Couts is not satisfied with this arrangement that your purpose is to have your mortgage foreclosed. In this connection you might call Mr. Couts' attention to the fact that your mortgage was executed before the amendment to the law of 1897, extending the time for redemption to twelve months, and that the supreme court has recently decided that as to mortgages executed before this amendment, the mortgagor has but six months within which to make redemption. If you should agree with Mr. Couts for a conveyance of the property to you in satisfaction of the amount due you under your mortgage, the transaction will have to be brought about in this way: In consideration of the satisfaction of your indebtedness and a surrender of the notes to Mr. Couts, he will make a deed to you, which will vest in you the absolute title to the property. At the same time you would execute and deliver to Mr. Couts an instrument giving him the option to purchase the property from you within twelve months at a figure to be named in the option—this figure should be such amount as will cover interest on the amount due you and taxes on the property. As you have determined not to accept a new mortgage from Mr. Couts, the only course left open to you for the protection of your interests is to enter into such an arrangement with Mr. Couts as is above suggested, or to commence proceedings to foreclose your mortgage before the 16th of next month."

On October 7, 1901, Hunsaker wrote appellant, "Inclosed you will please find copies of a letter and papers which I have just mailed Mr. O'Neill." The "letter" to O'Neill refers to the "papers" mentioned in the quotation in the following excerpt from it: "Inclosed you will please find carbon copies of the papers which should be executed to consummate the business consisting of a deed from Couts to you for the property described in your mortgage, a release and discharge of Mr. Couts from all indebtedness to you; . . . a quitclaim deed from you to Mr. Couts, and the escrow

agreement, under the terms of which the deed is to be deposited with the Farmers & Merchants' Bank of this City."

The "deed from Couts to you" was the one above mentioned as having been executed on October 10, 1901. The "release and discharge of Mr. Couts from all indebtedness to you" contained this language, among other things: "I have remised, released and forever discharged the said Cave J. Couts from all claims of every kind, nature and character soever against him, from the beginning of the world to this day." The "quitclaim deed from you to Mr. Couts" was in the ordinary form. The "escrow agreement" was in the following language: "The within quitclaim deed from Richard O'Neill to Cave J. Couts is herewith deposited in escrow by said Richard O'Neill with the Farmers & Merchants' Bank of Los Angeles, California, which is to deliver the same to the within named Cave J. Couts, if said Cave J. Couts shall, on or before the 16th day of January, 1902, place to the credit of said Richard O'Neill in said Farmers & Merchants' Bank, the sum of $18,467.34; or shall, on or before the 16th day of April, 1902, place to the credit of said Richard O'Neill with said bank, the sum of $18,914.99; or shall on or before the 16th day of July, 1902, place to the credit of Richard O'Neill in said bank, the sum of $19,387.86; or shall on or before the 16th day of October, 1902, place to the credit of said Richard O'Neill in said bank, the sum of $19,860.73, and shall also place to the credit of said O'Neill in said bank such amount or amounts of money as said O'Neill may hereafter expend in the payment of taxes on the property mentioned in said deed, or in effecting redemptions from sales thereof made for delinquent taxes, which amounts shall be evidenced by delivery by said O'Neill to said Farmers & Merchants' Bank of the tax receipts or certificates of redemption therefor. Time is hereby expressly declared to be of the essence of this agreement; and if said Couts shall fail to so place to the credit of said O'Neill the amount of money above specified on or before the 16th day of October, 1902, said deed shall thereupon be returned by said bank to said O'Neill for cancellation and destruction."

Hunsaker testified that he, O'Neill, and appellant met in San Diego on October 10th, or the day before, and he continues: "My recollection is . . . that Mr. Couts, Mr. O'Neill,

and I had a talk . . . before the papers were executed. That Mr. O'Neill asked Mr. Couts if the papers which he had received, copies of which he had from me, were all right Mr. Couts said they were if Mr. O'Neill would not consent to taking a new mortgage. Mr. O'Neill said to Mr. Couts that he would not take a new mortgage, that Mr. Couts had not paid the interest for years, and that he, Mr. O'Neill, had had to pay the taxes and that unless this arrangement which was set forth in these papers was satisfactory to Mr. Couts that he would foreclose the mortgage. Mr. Couts then said it was all right." The various papers were then executed and, according to Hunsaker, "the original notes were delivered by me to Mr. Couts."

The appellant himself testified that he received the notes from Hunsaker, but he was not sure whether they were delivered at the time of the execution of the papers or a few days later. At any rate, he kept them until his deposition was taken in the case, and they were offered in evidence at the trial. They then had certain memoranda upon them and the appellant testified that these were in his handwriting and were placed upon the notes at the time he received them from Hunsaker. On one of the obligations the memorandum was as follows: "Paid by deed to Richard O'Neill of all the property securing this, computing interest in full at 10% net on whole amount compounded semi-annually, and to be reconveyed to me within one year from Oct. 16th, 1901, if I can pay the amount with 10% interest net payable quarterly. Couts." On the other note the appellant wrote, "this note paid the same as that of Octr. 16th, 1896, for $10,000. Couts."

When the various instruments were executed at San Diego on October 10, 1901, Hunsaker kept the release and discharge mentioned in his letter to O'Neill of the seventh. On October 21, 1901, he forwarded that document to appellant under cover with a letter in which he said: "Inclosed you will please find the satisfaction of the O'Neill mortgage and general release executed by Mr. O'Neill at the time of the settlement between yourself and Mr. O'Neill. This satisfaction and release as you will observe by the indorsement on it, has been recorded." This instrument was retained by appellant until his deposition was taken and was produced at the trial.

In the meanwhile, the grant deed from appellant to O'Neill, the quitclaim deed from O'Neill to appellant and the escrow instructions, all signed in San Diego on October 10, 1901, had been deposited by Hunsaker with the Farmers & Merchants' Bank of Los Angeles. This was done immediately after the meeting of the three men in San Diego. The papers remained with the bank for more than a year, or until after the last day upon which payment could be made by the appellant under the escrow instructions and a purchase of the property by him result. The payment was not made, although Hunsaker reminded the appellant by letter that his option was about to expire, the letter being dated eight days before the time fixed for that event, and Hunsaker procured a return of the instruments from the holder of the escrow. O'Neill took possession of the land on November 18, 1902.

Richard O'Neill died on May 7, 1910, and he had, nearly five months, at least, before that time, made a will in which he left to his son, the respondent, the real property conveyed by the appellant's deed of October 10, 1901. Hunsaker testified that he had a conversation with the appellant on or about December 13, 1909, during which he informed appellant that O'Neill had disposed of the land "in a way I am not prepared to tell you but it is not to you." This was in response to a question addressed by the appellant to Hunsaker, by which appellant asked whether O'Neill had disposed of the property. The appellant himself testified, "I had heard from others before Mr. O'Neill's death that he had disposed of his property, I understood by deeds and not by will," and he gives his recollection of Hunsaker's answer to his question, above mentioned, as follows: "Mr. O'Neill disposed of his interest" in the property covered by the deed of October 10, 1901, "the same as he did of all the rest of his property, but I am not at liberty to tell what that was." The estate of O'Neill passed through the due course of administration and the land devised to the respondent by the will was distributed to him on January 6, 1911. The appellant did not commence this action until September 10, 1915.

We would not have it understood, from the foregoing statement of the evidence supporting the finding of the trial court, that there was no conflict in the evidence introduced

under the issue from which the finding arose. Upon that issue there was a serious conflict, as there is much evidence in the record which is not in harmony with the matters which we have been at such pains, on account of the importance of the litigation, to state. We are not, however, concerned with the conflict in the evidence. That was for the trial court, and we are satisfied, from a careful examination of the record, that the trial judge was justified in resolving the conflicting evidence as he did. The finding that the deed of October 10, 1901, was not a mortgage is amply and substantially justified by the evidence.

The appellant's second point is that the evidence fails to support a finding of the trial court to the effect that the cause of action stated in the complaint was barred by the laches of the appellant in instituting the action. This point we need not consider. Having reached the conclusion already stated as to the effect of the deed, it becomes immaterial whether or not the commencement of the action was unreasonably deferred.

Before concluding this opinion there is, however, a matter which we must notice. The appellant's opening brief covers ninety pages. The respondent felt it necessary to reply in a far from laconic "brief" of 282 pages. The appellant's reply brief is thirty-eight pages in length, and the respondent, notwithstanding his earlier broadside, interposes a final brief of eighteen pages. The last page of this brief is devoted to an attempt to show that the appeal is frivolous. Surely, after all we have suffered from respondent, we might have been spared that one page! We are not inclined to seriously consider an assertion that an appeal is frivolous when the maker of the assertion has employed 299 pages (it will be noted that we exclude the one page) in an endeavor to demonstrate that it is not meritorious.

It is unjust and improper to afflict the courts with briefs as voluminous as the first brief filed by the respondent on this appeal. The courts of this state are heavily burdened with work and their labors are made more onerous by the presentation of such briefs as the one now before us. We have a right to expect that the profession will aid and not hamper us in our endeavor to keep pace with a flood of litigation, and we embrace this opportunity to remind them of their duty in that regard. In order that our comment may

not be improperly applied, we should state that, although the names of all counsel listed as attorneys for respondent at the head of this opinion are on the transcript on appeal, only the first name on the list is signed to the two briefs of the respondent.

The judgment is affirmed.

Finlayson, P. J., and Craig, J., concurred.