Opinion
 

 CHRISTIAN, J.
 

 William Ward seeks a writ of habeas corpus to annul a 15-day sentence for contempt of court (Pen. Code, § 166) imposed for violation of a preliminaiy injunction.
 

 Petitioner is a defendant in an action commenced by the City Attorney of Concord to enjoin as a nuisance the exhibition of an allegedly obscene motion picture. He challenges the validity of the preliminary injunction,
 
 *984
 
 which restrains exhibition of the film pending further proceedings in the action, upon the grounds (1) that the court did not conduct a “full adversary hearing” on the issue whether the film was obscene and (2) that the trial court did not view the film for the purpose of resolving this issue. (See
 
 People
 
 v.
 
 Noroff (1961)
 
 67 Cal.2d 791, 793 [63 Cal.Rptr. 575, 433 P.2d 479];
 
 Zeitlin v.Arnebergh
 
 (1963) 59 Cal.2d 901, 904, 908-911 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].)
 

 I
 

 Petitioner bases his argument on language in
 
 People
 
 ex rel.
 
 Busch
 
 v.
 
 Projection Room Theater
 
 (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600], and United States Supreme Court decisions cited therein. In
 
 Busch,
 
 the court held that the exhibition of obscene magazines and films was a form of activity which could be characterized as “indecent” or “offensive to the senses” interfering with the comfortable enjoyment of life of a “considerable number of persons” within the contemplation of Penal Code section 370, defining a public nuisance. The court also held that the public nuisance statutes must be enforced in such a way as to operate in a constitutional fashion, and, as so applied, there is no overriding principle of law which precludes the state from regulating the exhibition of obscene matter by application of the public nuisance statutes.
 

 Petitioner specifically relies on the following language in
 
 Busch, supra,
 
 17 Cal.3d at page 57: “Thus, in the matters before us if the trial court finds the subject matter obscene under prevailing law an injunctive order may be fashioned that is ‘proper and suitable’ in each case. It is entirely permissible from a constitutional standpoint to enjoin further exhibition of specific magazines or films
 
 which have been jinally adjudged to be obscene following a full adversary
 
 hearing.” (Italics added.)
 

 Petitioner contends that the procedure adopted by the court did not meet this test because there was no final determination of obscenity after a “full adversary hearing” before the preliminary injunction issued. He construes the use of the term “full adversary hearing” as requiring a trial on the merits before the showing of the allegedly obscene film may be preliminarily enjoined.
 

 Busch,
 
 however, does not prohibit issuance of a
 
 preliminary
 
 injunction prior to trial. Indeed, in discussing the necessity for a prior adversary hearing the court declined the opportunity to set forth requisite standards for such a procedure, stating at page 60: “We emphasize that the
 
 *985
 
 proceedings now before us remain at the pleading stage. Having determined that plaintiffs’ complaint is sufficient to state a cause of action based upon a general nuisance theory,
 
 we consider it inappropriate to describe in detail the precise dimensions of the injunctive and other relief which might be suitable
 
 in this and the related cases. It is enough that the parties and the trial court recognize that substantial constitutional issues are presented in this litigation, and that care must be exercised to assure that defendants’ constitutional rights are not infringed. More than this is not required.” (Italics added.)
 

 The above-quoted language from
 
 Busch,
 
 relied on by petitioner, requires only that a final adjudication of obscenity following a full adversary hearing is required before a court may
 
 permanently
 
 enjoin the exhibition of obscene matter.
 

 This differentiation between a preliminary and a permanent determination was made by the United States Supreme Court in
 
 Freedman
 
 v.
 
 Maryland
 
 (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734], wherein the court reversed a conviction for exhibiting a motion picture without submitting it to a state board of censors for prior approval, because the Maryland procedure of prior submission lacked adequate safeguards against undue inhibition of protected expression, and thus constituted an invalid previous restraint. The court stated, at pages 58-59 [13 L.Ed.2d at pages 654-655]: “. . . while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor’s determination whether a film constitutes protected expression. The teaching of our cases is that,
 
 because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint.
 
 See
 
 Bantam Books, Inc.
 
 v.
 
 Sullivan, supra; A Quantity of Books
 
 v.
 
 Kansas,
 
 378 U.S. 205;
 
 Marcus
 
 v.
 
 Search Warrant, supra; Manual Enterprises, Inc.
 
 v.
 
 Day,
 
 370 U.S. 478, 518-519. To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor’s view that the film is unprotected, may have a discouraging effect
 
 *986
 
 on the exhibitor. See
 
 Bantam Books, Inc.
 
 v.
 
 Sullivan, supra.
 
 Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license.” (Italics added.)
 

 Therefore, preliminary restraint may be imposed as long as the state’s procedure assures a prompt judicial determination prior to the imposition of any final restraint. The court also reaffirmed its holding in
 
 Times Film Corp.
 
 v.
 
 Chicago
 
 (1961) 365 U.S. 43, 49-50 [5 L.Ed.2d 403, 407-408, 81 S.Ct. 391], wherein it held that a municipal code provision requiring submission of motion pictures for examination or censorship prior to their public exhibition was not void on its face as violative of the First and Fourteenth Amendments. In so doing, the court stated:
 

 “ ‘The phrase “prior restraint” is not a self-wielding sword. Nor can it serve as a talismanic test.’ Even as recently as our last Term we again observed the principle, albeit in an allied area, that the State possesses some measure of power ‘to prevent the distribution of obscene matter’
 
 Smith
 
 v.
 
 California,
 
 361 U.S. 147, 155 (1959).
 

 “Petitioner would have us hold that the public exhibition of motion pictures must be allowed under any circumstances. The State’s sole remedy, it says, is the invocation of criminal process under the Illinois pornography statute, Ill. Rev. Stat. (1959), c. 38, § 470, and then only after a transgression. But this position, as we have seen, is founded upon the claim of absolute privilege against prior restraint under the First Amendment—a claim without sanction in our cases. . . .
 

 [¶] “. . . It is not for this Court to limit the State in its selection of the remedy it deems most effective to cope with such a problem, absent, of course, a showing of unreasonable strictures on individual liberty resulting from its application in particular circumstances.”
 

 Petitioner’s constitutional rights have not been violated by the superior court’s issuance of the preliminary injunction in this case. No restraint was imposed on the showing of the film in question until after petitioner and his codefendants, represented by counsel, were afforded an adversary hearing by the court. The record reveals that at that hearing, petitioner did not request that the court view the film and did not offer it in evidence. The court issued the preliminary injunction based on the affidavit of a police officer who viewed the entire film and described in detail the various sexual activities which it displayed. The affidavit
 
 *987
 
 concluded that, “During approximately 95% of the exhibition time the above described sex acts were explicitly portrayed on the screen. The remaining 5% of the time involved gutter language dialogue about the sex acts. There was no plot to this motion picture. ‘Slippery When Wet’ is hardcore pornography which left nothing to the viewer’s imagination.” The defendants (including petitioner), appearing through counsel at the hearing, did not cross-examine the officer, and offered no evidence on the issue of obscenity.
 

 Petitioner argues that the court’s procedure was constitutionally defective insofar as there was no guarantee that a final determination on the issue of obscenity would promptly follow the preliminary restraint. However, Code of Civil Procedure section 527, subdivision (a), provides in part that, “An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor. . . . When the cause is at issue it shall be set for trial at the earliest possible date and shall take precedence of all other cases, except older matters of the same character, and matters to which special precedence may be given by law.”
 

 Thus, there is a statutory imperative, enforceable by extraordinary writ proceedings in the appellate courts, requiring that matters wherein a preliminary injunction has been granted be given the highest priority for final determination. In the rare instance where even such an expeditious procedure might be irreversibly damaging to the party sought to be enjoined, such a showing may be made to the trial court as a ground for denying a preliminary injunction.
 

 Petitioner relies on the holding in
 
 Grove Press Inc.
 
 v.
 
 City of Philadelphia
 
 (3d Cir. 1969) 418 F.2d 82, in support of his contention that the California preliminary injunction procedure does not meet the requirements of First Amendment protection set forth in
 
 People
 
 ex rel.
 
 Busch
 
 v.
 
 Projection Room Theater, supra,
 
 17 Cal.3d 42. In that case, the court held that procedures initiated by the city, specifically a preliminary injunction to restrain the showing of an allegedly obscene motion picture, conflicted with First Amendment rights of protected expression in that there was no assurance that final hearing would be seasonably scheduled after issuance of temporary injunction and that a prompt decision would be forthcoming thereafter.
 

 
 *988
 
 As pointed out by petitioner, pages 90-91 of the
 
 Grove Press
 
 decision were cited by the California Supreme Court in
 
 Busch, supra,
 
 17 Cal.3d at page 58, in reference to the use of a preliminary injunction. The Third Circuit Court stated in
 
 Grove Press Inc.
 
 v.
 
 City of Philadelphia, supra,
 
 418 F.2d at page 90:
 

 “The purpose of a Pennsylvania preliminary injunction hearing is to receive prima facie evidence of facts to be ultimately established at the final hearing.“There are two kinds of injunctions in [Pennsylvania] courts of equity. The one is preliminary or interlocutory; the other final or perpetual. The object of the first in general is simply preventative—to maintain things in the condition in which they are at the time until the rights and equities of the parties can be considered and determined after a full examination and hearing.” ’. . .
 

 “The rules do not designate when the final hearing must be held subsequent to the granting of a preliminary injunction,
 
 although the general practice is to calendar equity actions on an accelerated trial list. . . .
 

 “The mischief we perceive in the Pennsylvania equity rules is that there is no guarantee a final hearing will be seasonably scheduled after the issuance of a preliminary injunction and that a prompt decision will be forthcoming thereafter. The preliminary restraint could exist days, and even months, before the judicial decision on the merits; where this possibility exists, an unacceptable threat to the freedom of expression without due process of law results. Failure to provide the necessary expeditiousness tinges the Pennsylvania preliminary injunctive procedures with unconstitutional hues when they are employed to restrain or inhibit expression prior to a final adjudication of an alleged obscene matter.
 

 [¶] “. . . It is only when the right of the state to regulate obscenity collides with undue inhibition of protected expression that a problem of constitutional dimension arises. Where expression is inhibited as a result of prompt judicial decision reached after an adversary proceeding, there can be no procedural due process complaint. But where the inhibition occurs in a preliminary proceeding, with no guarantee of a prompt judicial decision on the merits, the procedure is constitutionally defective because a restraint of presumably protected expression not only occurs but is capable of persisting for an unlimited time prior to the required judicial determination.” (Italics added.)
 

 
 *989
 
 Unlike the Pennsylvania procedure described in
 
 Grove Press,
 
 however, Code of Civil Procedure section 527, subdivision (a), does specifically provide that matters such as this shall receive preference for trial settings. Thus, the procedure employed by the trial court herein does not result in an unconstitutional prior restraint.
 

 The law of this state, as set forth in
 
 Busch,
 
 therefore, does not prohibit a preliminary injunction pending a final determination on the merits of the obscenity issue. Rather, it requires that (1) a prompt final judicial decision be available, and (2) any final adjudication be the result of a full adversary hearing.
 

 II
 

 We do not accept petitioner’s contention that the preliminary injunction was issued in violation of constitutional safeguards because the trial court neither viewed the film nor heard expert evidence on the issue of obscenity.
 

 Petitioner does not dispute the accuracy of the police officer’s affidavit. The affidavit describes in detail the pornography shown in the film.
 

 All of the cases cited as authority by the parties on this issue involve a magistrate’s determination on applications for warrants in criminal matters as to whether material sought to be seized is pornography. In
 
 Lee Art Theatre
 
 v.
 
 Virginia
 
 (1968) 392 U.S. 636 [20 L.Ed.2d 1313, 88 S.Ct. 2103], the Supreme Court reversed a conviction for possessing and exhibiting lewd and obscene motion pictures, holding that the pictures had been unconstitutionally seized. The court stated at page 637 [20 L.Ed.2d at page 1315]; “The admission of the films in evidence requires reversal of petitioner’s conviction. A seizure of allegedly obscene books on the authority of a warrant ‘issued on the strength of the conclusoiy assertions of a single police officer, without any scrutiny by the judge of any materials considered . . . obscene,’ was held to be an unconstitutional seizure in
 
 Marcus
 
 v.
 
 Search Warrant,
 
 367 U.S. 717, 731-732. It is true that a judge may read a copy of a book in courtroom or chambers but not as easily arrange to see a motion picture there. However, we need not decide in this case whether the justice of the peace should have viewed the motion picture before issuing the warrant. The procedure under which the warrant issued solely upon the conclusoiy assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer’s conclusions was not a procedure ‘designed to focus
 
 *990
 
 searchingly on the question of obscenity,’
 
 id.,
 
 at 732, and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression. See
 
 Freedman
 
 v.
 
 Maryland,
 
 380 U.S. 51, 58-59.”
 

 This discussion indicates that a judge may properly rely on the affidavit of a police officer where, as here, it did not merely contain conclusoiy assertions, but rather set forth detailed facts.
 

 In addition, Code of Civil Procedure section 527, subdivision (a), provides that a preliminary injunction may issue on the basis of affidavits alone. At the trial of the cause, where the normal rules of evidence apply, any final determination of the obscenity issue will usually be based on a viewing of the film itself.
 

 It should also be noted that, as petitioner concedes, he did not ask the court to view the film or offer it in evidence. “It is a general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived.”
 
 (Cucamonga County Water Dist.
 
 v.
 
 Southwest Water Co.
 
 (1971) 22 Cal.App.3d 245, 256 [99 Cal.Rptr. 557]; also
 
 see Jenner
 
 v.
 
 City Council
 
 (1958) 164 Cal.App.2d 490, 498 [331 P.2d 176].) We conclude that petitioner’s failure to request that the court view the film precludes a claim that the court erred in issuing a preliminary injunction without such a viewing.
 

 The order to show cause is discharged and the petition for writ of habeas corpus is denied.
 

 Rattigan, Acting P. J., and Paik, J.,
 
 *
 
 concurred.
 

 Petitioner’s application for a hearing by the Supreme Court was denied October 12, 1978. Mosk, J., and Newman, J., were of the opinion that the application should be granted.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.