[Civ. No. 19940. Fourth Dist., Div. Two. Jan. 20, 1981.]

THE PEOPLE EX REL. KEITH GOW, as City Attorney, etc., Plaintiff and Appellant, v.
MITCHELL BROTHERS' SANTA ANA THEATER et al., Defendants and Appellants.

924

COUNSEL

James J. Clancy for Plaintiff and Appellant.

Joseph Rhine, William K. Maas, Jr., Meredith Bradford and Robert Thorp for Defendants and Appellants.

## OPINION

**MORRIS, J.**—The plaintiff and the defendants appeal following a trial to determine whether the showing of allegedly obscene films by the defendant constituted a public nuisance. The case was tried in part by a jury and in part to the court. Judgments were entered finding certain of defendants' films obscene and granting part of the relief requested by plaintiff.

### Facts

Pursuant to Code of Civil Procedure section 731,[1] the Santa Ana City Attorney (City) brought an action against the owners and operators of

---

[1]Code of Civil Procedure section 731 reads, in pertinent part: "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as the same is defined in section thirty-four hundred and seventy-nine of the Civil Code, and by the judgment in such action the

the Mitchell Brothers' Santa Ana Theater (defendants) to abate a public nuisance. The City's complaint listed numerous films shown by the defendants between November 28, 1975, and March 30, 1977, all of which were alleged to be obscene. It was alleged that the showing of these films constituted a public nuisance as defined by Civil Code sections 3479 and 3480.[2] The City sought the following relief: that the court approve a resolution passed by the Santa Ana City Council revoking all of the defendants' operating licenses and permits; that the defendants be permanently enjoined from showing the named films; that the named films be destroyed by the state; that the box office receipts from the showing of the films be forfeited; that the defendants' theater be closed for one year; that the theater's fixtures and movable property be removed by the police and sold; that the plaintiff receive compensatory and punitive damages, and that the plaintiff recover costs and attorney's fees.

The court ruled that the issues of obscenity, public nuisance, and damages would be decided by a jury prior to the court's resolution of the equitable remedies issues. The court reasoned that since all relief sought by the City was dependent on a prior finding of obscenity and nuisance, a "prior resolution of the equitable issues would require a judicial determination of the issues of 'obscenity' and 'public nuisance' and would thus deprive defendants of a full and meaningful jury trial on the issue of damages." The jury trial itself was bifurcated. The jury first decided the issues of obscenity and public nuisance and then determined the amount of damages recoverable.

During the obscenity and public nuisance phase of the trial, the jury viewed 17 films at the defendants' theater.[3] The jury also heard exten-

---

nuisance may be enjoined or abated as well as damages recovered therefor. A civil action may be brought in the name of the people of the State of California to abate a public nuisance, as the same is defined in section thirty-four hundred and eighty of the Civil Code, ... by the city attorney of any town or city in which such nuisance exists ...."

[2]Civil Code section 3479 reads: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

Civil Code section 3480 reads: "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

[3]The City's complaint sought relief against 41 films, but only the 17 films that were viewed were within the control of the defendant. The City sought to enter into evidence

sive testimony from both lay and expert witnesses. After all the evidence had been presented, the jury was read over 50 separate instructions. Included in the instructions was the requirement that a film could be found obscene only if the jurors were convinced of such "beyond a reasonable doubt." The jury found eleven films obscene, four not obscene and could not reach a verdict on the remaining two.

After further presentation of evidence during the damages phase of the trial, the jury was instructed on the issues of nominal, compensatory and punitive damages. The jury awarded a total of $76,400 in compensatory damages and awarded no punitive damages.

Thereafter, the court issued its judgment and findings of facts and conclusions of law on the equitable issues. The court ruled in favor of the defendants on the issues of a constructive trust on the theater's box office receipts, the revocation of defendants' license, and the closing of the theater for one year. In the City's favor, the court permanently enjoined the exhibition or advertising by the defendants of the same 11 films which had been found obscene by the jury; ordered the defendants to allow the City's officers "free and total access to all parts of the theatre" for a two-year period for monitoring purposes; ordered the defendants to deposit $100,000 "in trust for the City ... as a security deposit against future attorney fees, costs, and expenses incurred by the City" in abating future nuisances by the defendants within a two-year period; ordered the destruction of the 11 "motion picture film prints" that were found obscene; and awarded the City the recovery of $5,869.31 in costs.

In total, five notices of appeal were filed. The defendants appealed and the City both appealed and cross-appealed "from the jury verdicts" on the issues of obscenity and damages.[4] Additionally, the City and the

---

still photographs of portions of all 41 films, which were termed "time and motion studies." The court denied the motion as to the 17 films under the best evidence rule (Evid. Code, § 1500). The "time and motion studies" for the other 24 films were first admitted, but were later excluded from evidence as unduly prejudicial under Evidence Code section 352.

[4]This court has no power to hear an appeal from a jury verdict, as such is not appealable. (Code Civ. Proc., § 904.1.) However, since there was filed a "Judgment on Verdicts in Open Court," we will treat the appeals as being from that judgment. (*Jackson* v. *Lovas* (1951) 106 Cal.App.2d 426, 427 [235 P.2d 232]; see also *In re Edgar M.* (1975) 14 Cal.3d 727, 740 [122 Cal.Rptr. 574, 537 P.2d 406]; *A. L. Castle, Inc.* v. *County of San Benito* (1964) 227 Cal.App.2d 602, 603-605 [38 Cal.Rptr. 855]; but see *Estate of Roberson* (1952) 114 Cal.App.2d 267 [250 P.2d 179], where this court expressed the fear that allowing an appeal in a case such as the present one "would open

defendants appealed from those portions of the "Judgment After Trial By Court" that were adverse to them. The errors asserted by the parties are too numerous to summarize at this point.[5] They will be dealt with at the appropriate parts of our discussion.

### Obscenity as a Public Nuisance

■ The defendants spend considerable time arguing that the use of equitable remedies in a civil action to abate a public nuisance is not a valid method of regulating obscenity. Although the California Supreme Court has expressly ruled contrary to this position (*People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600], cert. den. *sub nom., Van de Kamp* v. *Projection Room Theater* (1976) 429 U.S. 922 [50 L.Ed.2d 289, 97 S.Ct. 320]), the defendants criticize the ruling as "imprudent" and ask us nevertheless to uphold their argument. This we cannot do. Few principles of law are more basic than that courts are bound by the decisions of those other courts which exercise superior jurisdiction. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Since *Busch* holds that a state may regulate the exhibition of obscene matter by application of public nuisance statutes (17 Cal.3d at p. 55), we must conclude that the present action was properly brought.[6]

*Busch*, however, dealt only with a trial court's judgment sustaining a demurrer without leave to amend. And, since no reported case in this state has yet reviewed a final judgment following a full trial in a *Busch-*

---

the door to all manner of abuses." Such concern has subsequently been proved unfounded.)

[5]Some mention of the City's opening brief is necessary. Rarely has there been such a total disregard for that section of rule 13 of the Rules of Court which requires the statement of the case to be "[set] forth concisely." The "brief" spans 272 pages (at 36 lines to the page) and is supplemented by a 317-page "Expanded Statement of Facts." While such a large document is occasionally helpful (*Conaway* v. *Yolo Water & Power Co.* (1928) 204 Cal. 125, 127 [266 P. 944, 58 A.L.R. 674]), most often, as here, it is not. (*King* v. *Gildersleeve* (1889) 79 Cal. 504, 507-508 [21 P. 961]; *Couts* v. *O'Neill* (1921) 51 Cal.App. 152, 158 [196 P. 109].)

[6]Additionally, we note that the use of other types of civil proceedings to regulate obscenity in this state has been held valid. In *People* v. *E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315 [165 Cal.Rptr. 73], hearing denied on August 21, 1980, the court approved the application of Business and Professions Code section 17200 et seq., which provides for injunctions and civil penalties against those engaging in unfair competition, to a company involved in the commercial distribution of obscene films and magazines.

type lawsuit, many issues regarding trial procedures and remedies in such an action remain to be addressed.[7]

## Remedies

■ The defendants contend, on a variety of theories, that the trial court erred in granting any of the relief sought by the City. The City, on the other hand, cites numerous alleged errors by the trial court that led to what it contends was a wrongful denial of other requested remedies. We need not deal with each asserted error since we hold that, in this case, injunctive relief against those movies found to be obscene is the only remedy allowable under the public nuisance statutes. Thus, the trial court erred in awarding damages to the City, in allowing the City's officer "free and total access to all parts of the theatre," in ordering the maintenance of a $100,000 "trust fund" for possible future City legal costs, and in ordering the destruction of the 11 films found to be obscene.

This action was brought under the authority of Code of Civil Procedure section 731, which, inter alia, empowers a city attorney to bring a civil action "to abate a public nuisance." Abatement, however, is the sole relief that section 731 authorizes the city attorney to seek. This is evident when the above quoted language is compared to the first portion of the statute. That portion allows an action to be brought by "any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance . . . ." Such a person is expressly authorized to seek a judgment where "the nuisance may be enjoined or abated *as well as damages recovered therefor.*" (Italics added.) It is clear that the Legislature intended that one type of litigant could seek abatement *and* damages, while the other type of litigant could obtain abatement only. A city attorney, in an action "brought in the name of the people," fits squarely and exclusively in the latter classification.

The City attempts to fit itself into the class of litigants who can seek damages by relying on Civil Code section 14, which provides that "the

---

[7]Three cases have involved appeals in *Busch* actions, but all dealt with pretrial issues. *People* ex rel. *Gow* v. *Mitchell Brothers' Santa Ana Theater* (1980) 101 Cal.App.3d 296 [161 Cal.Rptr. 562] (appeal from order granting preliminary injunction); *In re Ward* (1978) 82 Cal.App.3d 981 [147 Cal.Rptr. 476] (petition for writ of habeas corpus following sentence for contempt of court for violation of preliminary injunction); *People* ex rel. *Camil* v. *Buena Vista Cinema* (1976) 57 Cal.App.3d 497 [129 Cal.Rptr. 315] (appeal following sustaining of demurrer to cause of action seeking relief under public nuisance statutes against obscene motion picture theater).

word person includes a corporation as well as a natural person."[8] The City reasons that since the action was brought by the city attorney at the direction of an incorporated city, this somehow converts the action into one brought by a "person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance." This argument borders on the frivolous. We agree with the defendants that "[w]ord games are being employed by Respondent to circumvent the straight-forward provisions of the code." Since abatement is the only relief that can be granted in this case, the portion of the judgment awarding damages must be reversed.

 We also conclude that the other remedies granted by the trial court, except for the injunction, are inconsistent with the language of section 731. The City's arguments to the contrary appear to stem from an erroneous view of what constitutes the public nuisance that may be abated. This misunderstanding can be seen from the City's extensive argument concerning the asserted error of the trial court in refusing to close the defendants' theater for a period of time. The theater should be closed, the City contends, because "[t]he suppression of nuisances injurious to public health or morality is among the most important duties of government." (*Phalen* v. *Commonwealth of Virginia* (1850) 49 U.S. (8 How.) 163, 168 [12 L.Ed. 1030, 1033].) It thus appears that the City believes that it is the theater that constitutes the public nuisance.[9] This is an incorrect reading of the *Busch* decision. In *Busch*, the court states that "the *exhibition* of obscene magazines and films ... may be characterized as 'indecent' or 'offensive to the senses'" (17 Cal.3d at p. 49), talks about "the state's interests in regulating the *exhibition* of obscene matter" (*id.*, at p. 51), and concludes that "public nuisance laws may properly be employed to regulate the *exhibition* of obscene material to 'consenting adults.'" (*Id.*, at p. 53, italics added.) ██ ██ ██ ██ ██ Thus, the public nuisance is not the theater, nor even the obscene films

---

[8]The City has erroneously cited section 14, which defines words and phrases used in the Civil Code only. However, the identical definition of "person" appears in Code of Civil Procedure section 17, which defines words and phrases used in the Code of Civil Procedure, of which the subject section 731 is a part. We thus treat the City's argument as based on section 17.

[9]We need not long address the merits of the City's contention that the trial court erred in not closing the defendants' theater. *Busch* held that such relief "would result in a full and pervasive prior restraint upon the freedom of speech and of the press in violation of the First and Fourteenth Amendments to the United States Constitution." (17 Cal.3d at p. 58.) The City's argument that this language is merely dictum which does not bind this court is unpersuasive.

themselves.[10] It is the *exhibition* of those obscene films in the theater that constitutes a public nuisance.

Once it is recognized that the public nuisance is nothing more than the act of exhibiting obscene films, it becomes apparent why all the remedies, save the injunction, are inappropriate. The injunction against the advertisement or exhibition of the 11 obscene films is sufficient to afford the City as full relief as is possible in a section 731 action, i.e., the abatement of the public nuisance. The $100,000 trust fund, the free access to the theater by the City's agents, the destruction of the obscene films, and the money damages are unauthorized in an action to abate a public nuisance.

The Supreme Court stated the governing principle in *Anderson v. Souza* (1952) 38 Cal.2d 825, 840-841 [243 P.2d 497]: "'Injunctive process ought never to go beyond the necessities of the case and where a legitimate business is being conducted and in the conduct thereof a nuisance has been created and is being maintained, *the relief granted should be directed and confined to the elimination of the nuisance . . . .*'" (Italics added.) (See also *Wade v. Campbell* (1962) 200 Cal. App.2d 54, 62 [19 Cal.Rptr. 173, 92 A.L.R.2d 966]; *Morton v. Superior Court* (1954) 124 Cal.App.2d 577, 582-585 [269 P.2d 81, 47 A.L.R.2d 478].)[11] Indeed, *Busch* holds that abatement in this case is to be accomplished by a "proper and suitable" injunction (17 Cal.3d at p. 57) and that such abatement "must be directed to particular books or films which have been adjudged obscene following a fair and full adversary hearing, rather than against the premises in which the material is sold, exhibited or displayed." (*Id.*, at p. 59.)

---

[10]That obscene films are not, in and of themselves, public nuisances is recognized in *Busch*. The court noted (17 Cal.3d at pp. 51-52) the difference between *Stanley v. Georgia* (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243] and the cases of *Paris Adult Theatre I v. Slaton* (1973) 413 U.S. 49 [37 L.Ed.2d 446, 93 S.Ct. 2628] and *People v. Luros* (1971) 4 Cal.3d 84 [92 Cal.Rptr. 833, 480 P.2d 633], cert. den., 404 U.S. 824 [30 L.Ed.2d 52, 92 S.Ct. 51]. *Stanley* held unconstitutional a prosecution for the private possession of obscene films. *Paris* and *Luros* stated, however, that the commercial distribution of obscenity, even to consenting adults, could be constitutionally regulated. Thus, obscene films do not become legally objectionable until they are publicly exhibited or distributed. For this reason in particular, the trial court's order to destroy the 11 obscene films in this case is incorrect.

[11]The general rule set forth in *Anderson* is of particular importance in cases, such as the present one, that involve First Amendment rights:

"An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pinpointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State

In summary, we hold that the only purpose of a section 731 action by a city attorney is "to abate a public nuisance." To accomplish anything else would be beyond the scope of such an action. The public nuisance in this case is the exhibition of obscene films. If the defendants are permanently enjoined from advertising or exhibiting the films that were found obscene, the public nuisance will have been abated. The other remedies are excessive.

## Trial Procedures

In reviewing the procedures employed in the trial court to resolve the issues of obscenity and public nuisance, we are aware of the special constitutional considerations relevant to this type of case. The United States Supreme Court has recently stated that "the regulation of a communicative activity such as the exhibition of motion pictures must adhere to more narrowly drawn procedures than is necessary for the abatement of an ordinary nuisance." (*Vance* v. *Universal Amusement Co., Inc.* (1980) 445 U.S. 308, 316 [63 L.Ed.2d 413, 420, 100 S.Ct. 1156, 1160-1161].) And, as was noted in *Busch*, "the California public nuisance statutes must be enforced in such a way as to operate in a constitutional fashion." (17 Cal.3d at p. 55.)

█ It is well settled that obscenity is not protected by the First Amendment. (*Roth* v. *United States* (1957) 354 U.S. 476, 484, 485 [1 L.Ed.2d 1498, 1506, 1507, 77 S.Ct. 1304].) But, care must be taken in determining what is obscene so as not to interfere with matter that is entitled to a constitutional shield. The job of the courts is to "distinguish commerce in ideas, protected by the First Amendment, from commercial exploitation of obscene material." (*Miller* v. *California* (1973) 413 U.S. 15, 36 [37 L.Ed.2d 419, 438, 93 S.Ct. 2607].) Unarguably, this distinguishing process must include a "judicial determination in an adversary proceeding." (*Freedman* v. *Maryland* (1965) 380 U.S. 51, 58 [13 L.Ed.2d 649, 654, 85 S.Ct. 734]; see also *Paris Adult Theatre I* v. *Slaton, supra*, 413 U.S. 49, 55 [37 L.Ed.2d 446, 455-456]; *Busch, supra*, 17 Cal.3d at p. 57.)

---

may not employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' [Citation.] In other words, *the order must be tailored as precisely as possible to the exact needs of the case.*" (*Carroll* v. *Princess Anne* (1968) 393 U.S. 175, 183-184 [21 L.Ed.2d 325, 332-333, 89 S.Ct. 347], italics added; see also *United Farm Workers Organizing Committee* v. *Superior Court* (1971) 4 Cal.3d 556, 570 [94 Cal.Rptr. 263, 483 P.2d 1215].)

■ At the outset, we deal with the defendants' contention that a *Busch* action cannot be maintained in this case. Defendants cite the language in *Busch* that framed the issue in that case: "we consider whether or not a civil action brought by law enforcement officers to restrain the exhibition of obscene books and films states a cause of action for relief under the public nuisance laws of this state." (17 Cal.3d at p. 47.) Since the court did not describe the action as one to restrain the exhibition of *allegedly* obscene books and films, the defendants argue that *Busch* applies only where there has been a final judicial determinaton of obscenity prior to the filing of the public nuisance action. We disagree. It is clear that *Busch* only requires a judicial determination of obscenity as a condition precedent to the granting of any permanent injunctive relief, not as a prerequisite to the bringing of the action in the first place. We also find it significant that the two post-*Busch* cases upholding the issuance of preliminary injunctions were both actions against the exhibition of "allegedly" obscene motion pictures. (*People* ex rel. *Gow* v. *Mitchell Brothers' Santa Ana Theater, supra*, 101 Cal.App.3d at p. 299; *In re Ward, supra*, 82 Cal.App.3d at p. 983.)

■ The City asserts as error the court's pretrial ruling that the defendants were entitled to a jury trial on the questions of obscenity and nuisance. We need not, however, address the issue of the right to a jury trial in *Busch* actions. If the court's ruling was error,[12] the City was not harmed by it and thus cannot raise it on appeal. (Code Civ. Proc., § 475.) Despite the court's ruling, it is clear, as even the City for some reason argues, that when the court made its order concerning the injunction, it exercised a fact-finding judgment independent from the

---

[12]As this court has noted before (*People* ex rel. *Gow* v. *Mitchell Brothers' Santa Ana Theater, supra*, 101 Cal.App.3d at p. 305, fn. 9), it appears that there is no constitutional right to a jury trial in a public nuisance obscenity case. (See also *Alexander* v. *Virginia* (1973) 413 U.S. 836 [37 L.Ed.2d 993, 93 S.Ct. 2803]; *Penthouse Intern., Ltd.* v. *McAuliffe* (5th Cir. 1980) 610 F.2d 1353, 1363 cert. dism., 447 U.S 931 [65 L.Ed.2d 1131, 100 S.Ct. 3031.) This is true despite seemingly contradictory language in cases decided contemporaneously with *Alexander*. In *Paris Adult Theatre I* v. *Slaton, supra*, the court validated civil actions .to regulate obscenity as long as the state law "meets the First Amendment standards set forth in *Miller* v. *California*." (413 U.S. at p. 69 [37 L.Ed.2d at p. 464].) *Miller* v. *California* (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607], enunciates the test to be applied in obscenity cases, which test includes the application of "contemporary community standards." (413 U.S. at p. 24 [37 L.Ed.2d at p. 431].) *Miller* also instructs that "[i]n resolving the inevitably sensitive questions of fact and law, *we must continue to rely on the jury system*, accompanied by the safeguards that judges, rules of evidence, presumption of innocence, and other protective features provide . . . ." (413 U.S. at p. 26 [37 L.Ed.2d at p. 432], italics added.) A jury trial thus seems to be a significant part of the "First Amendment standards set forth in Miller." (See also Note, *The Devil and the D.A.: The Civil Abatement of Obscenity*

verdicts of the jury.[13] Since we have held that the injunction is the only proper remedy in this case, the jury was at most an advisory body. If any party is entitled to raise the jury trial issue it is the defendants. They did not, however, raise it.

■ The City also contends that the trial court erred in requiring the fact of obscenity to be proved "beyond a reasonable doubt." The court established the high burden of proof based on the reasoning of Mr. Justice Brennan's concurring opinion in *McKinney* v. *Alabama, supra,* 424 U.S. 669, 678 [47 L.Ed.2d 387, 395] (conc. opn. of Brennan, J.). The City relies on *Mugler* v. *Kansas* (1887) 123 U.S. 623 [31 L.Ed. 205, 8 S.Ct. 273] to support its position that the burden of proof should be by "clear and convincing evidence."[14] We agree with the trial court that the issue of obscenity *vel non* in a public nuisance abatement action must be proved beyond a reasonable doubt.

*Mugler* involved the constitutionality of a Kansas law that, inter alia, required the closing as a "common nuisance" of those buildings found by a court to be "'places where intoxicating liquors are manufactured, sold, bartered, or given away ....'" (123 U.S. at p. 670 [31 L.Ed. at p. 213].) In rejecting the defendants' contention that the procedures under the statute violated due process of law, the court stated: "The court is not to issue an injunction simply because one is asked, or because the charge is made that a common nuisance is maintained in violation of

(1977) 28 Hastings L. J. 1329, 1337-1340; Note, *Obscene Material as a Public Nuisance* (1977) 65 Cal.L.Rev. 330, 340; *McKinney* v. *Alabama* (1976) 424 U.S. 669, 687-689 [47 L.Ed.2d 387, 400-401, 96 S.Ct. 1189] (conc. opn. of Brennan, J.); *People* v. *E.W.A.P., Inc., supra,* 106 Cal.App.3d 315, 325 (dis. opn. of Kaus, P. J.).)

[13]Conclusion of law number IV of the trial court's "Findings of Fact and Conclusions of Law" preceded a list of 11 films by stating: "*Based upon the Court's personal viewing,* each of the following motion picture films named below constitute subject matter which is obscene beyond a reasonable doubt, as the term 'obscene' is defined in Penal Code Section 311(a) ...." (Italics added.) During a hearing concerning the "Findings of Fact and Conclusions of Law," the judge explained that the conclusion of law "intended to show *based upon the court's personal viewing rather than the jury's deliberations,* because I personally viewed these films also. And I am making this, made the decision on the equitable issues that each of the following motion pictures named below constitute subject matter which is obscene beyond a reasonable doubt as the term defined in Penal Code section 311(a)." (Italics added.)

[14]Apparently, the City concedes that the "preponderance of the evidence" burden of proof would be inadequate. Although arguing that the burden should have been a "preponderance of the evidence" for the jury trial on damages, the City states that "the burden of proof on the equitable trial should have been by 'clear and convincing' evidence." We are only concerned with the burden of proof for the latter, since we hold that the injunction is the only appropriate remedy.

law. The statute leaves the court at liberty to give effect to the principle that an injunction will not be granted to restrain a nuisance, except upon *clear and satisfactory evidence* that one exists." (123 U.S. at p. 673 [31 L.Ed. at p. 214], italics added.) If this were a normal public nuisance abatement action, this language from *Mugler* might be persuasive. (See e.g., *People* v. *Frangadakis* (1960) 184 Cal.App.2d 540, 550 [7 Cal.Rptr. 776] (burden of proof in action to abate a public nuisance under Bus. & Prof. Code, § 25604 is by a preponderance of the evidence.).) This is not, however, a normal action. As we noted earlier, the Supreme Court has recognized that "more narrowly drawn procedures" are required when the nuisance to be abated is the exhibition of obscene films. (*Vance* v. *Universal Amusement Co., Inc., supra*, 445 U.S. at pp. 315-316 [63 L.Ed.2d at pp. 420-421, 100 S.Ct. at pp. 1160-1161].) We conclude that one of the required procedures is that obscenity be proved beyond a reasonable doubt.

In *McKinney* v. *Alabama*, Mr. Justice Brennan wrote a concurring opinion concerning the procedural problems involved in a civil obscenity action. In a portion of that opinion, which was joined by Mr. Justice Marshall and Mr. Justice Stewart, Brennan dealt with the issue of the burden of proof in such actions. (424 U.S. at pp. 683-687 [47 L.Ed.2d at pp. 398-401].) It was there concluded that "the hazards to First Amendment freedoms inhering in the regulation of obscenity require that even in ... a civil proceeding, the State comply with the more exacting standard of proof beyond a reasonable doubt." (*Id.*, at pp. 683-684 [47 L.Ed.2d at pp. 398-399].)

Although we agree with the entire "burden of proof" portion of the Brennan opinion, one passage is particularly persuasive: "Inherent in all factfinding procedures is the potential for erroneous judgments and, when First Amendment values are implicated, the selection of a standard of proof of necessity implicates the relative *constitutional* acceptability of erroneous judgments. 'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value ... this margin of error is reduced as to him by the process of placing on the other party the burden ... of persuading the factfinder at the conclusion of the trial of [the existence of the fact] beyond a reasonable doubt." *Speiser* v. *Randall*, 357 U.S. 513, 525-526 [2 L.Ed.2d 1460, 1472, 78 S.Ct. 1332] (1958). See, e.g., *In re Winship*, 397 U.S. 358, 369-372 [25 L.Ed.2d 368, 378-380, 90 S.Ct. 1068, 1075-1076] (1970) (Harlan, J., concurring).... In the civil adjudica-

tion of obscenity *vel non*, the bookseller has at stake such an 'interest of transcending value'—protection of his right to disseminate and the public's right to receive material protected by the First Amendment. Protection of those rights demands that the factfinder be almost certain—convinced beyond a reasonable doubt—that the materials are not constitutionally immune from suppression." (424 U.S. at p. 684 [47 L.Ed. at pp. 398-399], original italics.)

### Discovery

■ One month prior to the commencement of the jury trial in this action, one of the defendants (James Mitchell) was ordered to pay $5,000 in sanctions to the City's counsel for noncompliance with earlier discovery orders. ■ ■ fn.15.) The defendants now seek a reversal of that order.[15]

■ We find it impossible to reverse the order imposing sanctions because defendants have provided an inadequate record. The $5,000 sanction was imposed as part of the court's "Second Order Compelling Answers to Questions and Production of Documents and Things, and for Reasonable Expenses and Attorney's Fees." That order required Mitchell to answer well over 100 deposition questions and produce four different types of documents. Defendants make a broad attack on this order, claiming that the questions and documents relate to the defendants' finances and that financial information is relevant only where punitive damages are proper. The defendants cannot prevail on this issue for two separate reasons. First, the record is incomplete in that it does not contain 49 of the deposition questions that Mitchell was re-

[15]Despite the City's contention to the contrary, the order is properly before this court for review. The City argues that the "collateral order doctrine" (see generally *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297]; *Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668]) makes the order imposing sanctions an appealable one which was subject to review here only upon a timely appeal from that order or a petition for a prerogative writ. However, while the collateral order doctrine has been applied to make appealable orders imposing sanctions for an attorney's misconduct at trial (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942]) and for a party's failure to attend a mandatory settlement conference (*Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 502 [120 Cal.Rptr. 176]), it has been held not to apply to orders imposing sanctions for refusal to make discovery. (*Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709 [39 Cal.Rptr. 891, 394 P.2d 707]; *Freidberg* v. *Freidberg* (1970) 9 Cal.App.3d 754, 764 [88 Cal.Rptr. 451]; *Munson* v. *Singer* (1965) 238 Cal.App.2d 697 [48 Cal.Rptr. 167].) Thus, the order here complained of is nonappealable on its own and may be reviewed now that a final judgment in the case has been entered. (See Code Civ. Proc., § 906.)

quired to answer.[16] Second, the defendants have failed to specify how the questions and documents relate to their finances.[17] The defendants have not carried their burdens of making an affirmative showing of error by an adequate record (*In re Kathy P.* (1979) 25 Cal.3d 91, 102 [157 Cal.Rptr. 874, 599 P.2d 65]; *Rossiter* v. *Benoit* (1979) 88 Cal. App.3d 706, 711-712 [152 Cal.Rptr. 65]) or of pointing out reversible error in their briefs (*Fox* v. *Erickson* (1950) 99 Cal.App.2d 740, 741-742 [222 P.2d 452]).

We have considered, but do not discuss, the numerous other points raised by both parties. Most concerned asserted errors during the jury trial for damages, which we have decided should not have been held. The remaining points are completely unmeritorious.

The $5,000 discovery sanction and those parts of the "Judgment After Trial By Court" enjoining the defendants from advertising or exhibiting the eleven films found by the trial court to be obscene beyond a reasonable doubt and denying the City's requests for a constructive trust on the defendants' box office receipts, a revocation of the defendants' license, and the closure of defendants' theater for one year are affirmed. The "Judgment on Verdicts in Open Court" awarding $76,400 in compensatory damages to the City and those parts of the "Judgment After Trial By Court" ordering access for the City's officers to all parts of the defendants' theater for two years, the payment by the defendants of $100,000 into a trust fund for the City's future attorney fees, and the destruction of the prints of the films declared obscene are reversed.

Gardner, P. J., and McDaniel, J., concurred.

The petitions of all the parties for a hearing by the Supreme Court were denied May 13, 1981.

---

[16]The court ordered Mitchell to answer, inter alia, "those questions set forth in the Declaration of James J. Clancy in support of plaintiff's Motion, numbered 80 through 128...." This declaration, however, is not in the record.

[17]A cursory review of the discovery orders reveals that most of the questions which Mitchell was required to answer have nothing to do with economics. For example: "Would you say that 'Behind the Green Door' was hard-core pornography?", "How does Cinema 7, Inc., determine what films are going to be shown at various theaters?", "Who wrote the film play, 'Sodom and Gomorrah'?", "Did you do any camera work on 'Resurrection of Eve'?", "Are there different versions of the film, 'Sodom and Gomorrah,' or are they all essentially the same?"